UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| LUIS C. CHAVEZ, INDIVIDUALLY, AND AS SPECIAL ADMINISTRATOR OF THE ESTATE OF MARCARIO ARAUJO CHAVEZ; | CIV. NO. 17-00446 LEK-RT |
| Plaintiff, | |
| vs. | |
| DEUTSCHE BANK NATIONAL TRUST COMPANY,  OCWEN LOAN SERVICING, LLC,  AMERICAN HOME MORTGAGE SERVICING, INC., JOHN DOES 1-10, DOE CORPORATIONS 1-10,  DOE PARTNERSHIPS 1-10,  DOE ENTITIES 1-10,  DOE GOVERNMENTAL UNITS 1-10, | |
| Defendants. | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

On January 23, 2019, Defendants Deutsche Bank National

Trust Company, as Trustee for American Home Mortgage Assets

Trust 2007-3, Mortgage-Backed Pass-Through Certificates Series

2007-3 ("Deutsche Bank"); Ocwen Loan Servicing, LLC ("Ocwen");

and Homeward Residential, Inc., formerly known as American Home

Mortgage Servicing, Inc. ("AHMSI," collectively "Defendants")

filed their Motion to Dismiss Plaintiff's Second Amended

Complaint ("Motion").  [Dkt. no. 48.]  Plaintiff Luis C. Chavez,

Individually and as Special Administrator of the Estate of

Marcario Araujo Chavez ("Plaintiff"), filed his memorandum in opposition on March 15, 2019, and Defendants filed their reply on March 22, 2019.  [Dkt. nos. 56, 57.]  This matter came on for hearing on April 5, 2019.  On April 22, 2019, this Court issued an entering order informing the parties of its rulings on the Motion.  [Dkt. no. 59.]  The instant Order supersedes that entering order.  Defendants' Motion is hereby granted in part and denied in part for the reasons set forth below.

<u>**BACKGROUND**</u>

The instant case arises from issues related to the mortgage on certain real property in Makawao, Hawai`i ("the Property").  After he executed the mortgage, Plaintiff's father, Marcario Araujo Chavez ("M.A. Chavez"), transferred the Property to Plaintiff.

Plaintiff, who was proceeding pro se at the time, initiated this action on April 6, 2016 in state court, and he filed his First Amended Complaint on July 6, 2017, as well as an errata thereto ("Errata") on July 11, 2017.  [Notice of Removal of Civil Action ("Notice of Removal"), filed 9/6/17 (dkt. no. 1), Decl. of J. Blaine Rogers ("Rogers Removal Decl."), Exh. A (state court docket sheet), Exh. C at 2-4 (Errata), Exh. C at 5-21 (First Amended Complaint).]  Defendants removed the action based on diversity jurisdiction or, in the

2

alternative, federal question jurisdiction.  [Notice of Removal at ¶¶ 7, 24.]

The First Amended Complaint alleged: an unfair and deceptive acts and practices ("UDAP") claim; a claim alleging breach of the implied covenant of good faith and fair dealing; a promissory estoppel claim; and a claim for punitive damages. The Errata added a claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*  On June 27, 2018, this Court issued an Order Granting in Part and Denying in Part Defendants' Motion to Dismiss ("6/27/18 Order").  [Dkt. no. 32.[1]]  All of Plaintiff's claims were dismissed without prejudice, except for the claim for punitive damages, which was dismissed with prejudice.  6/28/18 Order, 2018 WL 3148097, at *2, *5.

Plaintiff, who is now represented by pro bono counsel, filed his Second Amended Complaint on December 10, 2018.  [Dkt. no. 44.]

According to the Second Amended Complaint, Plaintiff and his family began development on the Property in 1988.  As of 1995, there were two separate houses on the Property, the second of which Plaintiff built with his sons.  [Id. at ¶ 8.] Plaintiff acquired the Property from M.A. Chavez through a quit

---

[1] The 6/27/18 Order is also available at 2018 WL 3148097.

claim deed on April 3, 2007.  [Id. at ¶¶ 2, 4.]  Plaintiff
maintains both houses on the Property and uses the second house
as a rental unit.  Plaintiff ultimately intends to sell the
second house to fund his retirement.  [Id. at ¶¶ 8-9.]

When Plaintiff acquired the Property, it was
encumbered by a $650,000.00 mortgage loan ("Mortgage") that
M.A. Chavez obtained from American Home Mortgage on March 7,
2007.  AHMSI was the servicer for the Mortgage.  [Id. at ¶ 17.]
According to Plaintiff, he has always made timely payments on
the Mortgage, and AHMSI accepted the payments from him.  [Id. at
¶¶ 5, 18.]  Plaintiff therefore alleges AHMSI and Ocwen, which
Plaintiff alleges is AHMSI's successor, were aware that
Plaintiff "had a vested interest in the Property."  [Id. at
¶¶ 18, 28.]

M.A. Chavez died on November 30, 2010, and Plaintiff
became the administrator of M.A. Chavez's estate ("Estate").
Plaintiff alleges that, in his capacity as the administrator, he
has the authority to negotiate details regarding the Mortgage.
[Id. at ¶¶ 6-7.]  According to Plaintiff, in March 2010, his
payments on the Mortgage began accruing a surplus.  [Id. at
¶¶ 22-24.]  The surplus exceeded the monthly Mortgage payment.
The Mortgage statement dated January 21, 2011 reflected a
$4,393.60 surplus in escrow.  [Id. at ¶ 25.]  On numerous
occasions, AHMSI representatives told Plaintiff the surplus

4

would be applied to the Mortgage, but the surplus has neither been applied to the Mortgage nor returned to Plaintiff. [Id. at ¶¶ 26-28, 39.] Plaintiff alleges the misappropriation of his funds are part of an ongoing "pattern and practice of misconduct by Ocwen." [Id. at ¶ 49.]

In January 2011, Plaintiff contacted AHMSI to obtain information about paying off the Mortgage.[2] [Id. at ¶ 29.] In February 2011, an AHMSI employee inspected the Property. [Id. at ¶ 31.] Plaintiff alleges that, prior to the inspection, AHMSI did not realize there were two houses on the Property, and AHMSI "wanted to unjustly enrich itself by profiting off of [Plaintiff's] hard work." [Id. at ¶ 33.] Thereafter, AHMSI allegedly engaged in a pattern of harassment that "began in 2011 upon maliciously publicly filing a fraudulent foreclosure instrument, and actively continued through 2017." [Id. at ¶ 34.]

On April 5, 2011, Plaintiff received a notice that AHMSI was accelerating the Mortgage and foreclosing upon the Property ("First Notice"). [Id. at ¶ 35.] Plaintiff alleges AHMSI charged "gratuitous and inappropriate fees" because of the

---

[2] Plaintiff also alleges he is able to tender the amount due under the Mortgage, and has been able to do so "since the inception of Defendants' . . . wrongful actions." [Second Amended Complaint at ¶ 105.]

delinquency alleged in the First Notice.  [Id.]  At that time, Defendants knew or should have known that the Mortgage account was current, with a surplus of $16,313.68.  [Id. at ¶¶ 37-38.] According to Plaintiff, the Mortgage required that, in the event of a deficiency, the surplus on the account should have been applied to the account before any acceleration notice was sent, and therefore AHMSI should not have sent the First Notice.  [Id. at ¶¶ 40-41.]

After sending Plaintiff the First Notice, Defendants "wrongfully, maliciously, and unlawfully continued to harass" him.  [Id. at ¶ 42.]  In violation of the Mortgage's requirement that an acceleration notice allow at least thirty days to cure the default, Defendants sent Plaintiff another notice of the loan acceleration two days after the First Notice ("Second Notice"), and they denied him the opportunity to respond to either the First Notice or the Second Notice (collectively "Notices").  [Id. at ¶¶ 36, 43-44.]  Within thirty days from either of the Notices, Plaintiff attempted to make a $4,400.00 payment to AHMSI through Western Union, but AHMSI wrongfully returned the payment and refused to apply it to his account. [Id. at ¶ 44.]  Plaintiff alleges that, "[s]hortly thereafter," it wrongfully rejected his payment, "AHMSI began improperly assessing fines and late fees to the Mortgage for the Property.

These fines began in June 2010 and continue until to [sic] this day." [Id. at ¶ 46.]

Plaintiff argues that, even if he was delinquent in the Mortgage payments, and even if there had been no surplus in the account, AHMSI wrongfully prevented him from making a payment and denied him his right to cure any delinquency. [Id. at ¶ 45.] Plaintiff also alleges that, within thirty days of the Notices, he sent AHMSI dispute letters, but AHMSI ignored them. [Id. at ¶ 47.]

Plaintiff alleges he continues to suffer from severe emotional distress as a result of the harassment, and he has a reasonable belief that the harassment will continue unless he obtains a court order. [Id. at ¶¶ 34, 48.] Defendants publicly filed a foreclosure notice before they notified him, which resulted in Plaintiff "learn[ing] about this embarrassing situation from friends and even strangers." [Id. at ¶ 48.] Plaintiff also alleges Defendants' "improper fines and late fees . . . compound[s] their egregious behavior and [Plaintiff's] emotional distress." [Id. at ¶ 50.]

Plaintiff alleges that, on March 13, 2017, Deutsche Bank filed a second assignment of the Mortgage ("3/13/17 Assignment"). However, Plaintiff alleges that there was no legal instrument assigning the Mortgage to Deutsche Bank prior to the 3/13/17 Assignment. [Id. at ¶ 19.] Plaintiff also

alleges the 3/13/17 Assignment is invalid because it was "robo-signe[d.]"  [Id. at ¶ 20.]  Further, there has never been a legitimate assignment of the Mortgage to Defendants.  Plaintiff therefore argues Deutsche Bank does not have a valid, enforceable interest in the Property, and it was never authorized to receive payments on the Mortgage.  [Id. at ¶ 21.] Plaintiff also argues that, although Ocwen sent him "a 'charge off' letter indicating the loan for the Property was charged off," Ocwen has sent him bills as recently as August 2018. [Id.]

Defendants initiated a second foreclosure action against Plaintiff in 2017.  [Id. at ¶ 51.]  Plaintiff alleges this was another example of the "bait-and-switch" Defendants engaged in, in which they gave him "conflicting and contradictory information."  [Id.]  Plaintiff contends the foregoing actions by Defendants constitute "a pattern of ongoing illegal and improper conduct."  [Id.]  As a result, the Property is encumbered and Plaintiff can neither "live peacefully on his [P]roperty" nor "sell the second house on the Property."  [Id. at ¶ 52.]

Plaintiff alleges the following claims: 1) a UDAP claim, in violation of Haw. Rev. Stat. § 480-2 ("Count I"); 2) a claim alleging FDCPA violations, in violation of 15 U.S.C. §§ 1692d, 1692e, and 1692f(6) ("Count II"); 3) breach of

contract ("Count III"); 4) breach of the implied covenant of good faith and fair dealing ("Count IV"); 5) promissory estoppel ("Count V"); 6) conversion ("Count VI"); 7) intentional interference with prospective economic advantage ("Count VII"); 8) a quiet title claim, pursuant to Haw. Rev. Stat. § 669-1 ("Count VIII"); 9) fraud ("Count IX"); 10) intentional infliction of emotional distress ("IIED" and "Count X"); 11) negligent infliction of emotional distress ("NIED" and "Count XI"); and 12) a claim alleging that Defendants violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.* ("Count XII").

Defendants now seek dismissal, with prejudice, of all claims in the Second Amended Complaint.

## DISCUSSION

### I.   Preliminary Issues

The 6/27/18 Order only granted Plaintiff leave to re-allege the claims in his First Amended Complaint and Errata, except his claim for punitive damages.  6/28/18 Order, 2018 WL 3148097, at *5.  This Court expressly stated: "Plaintiff is not allowed to add any new claims, parties, or theories of liability in the second amended complaint.  If he wishes to do so, he must file a motion for leave to amend."  Id.  Defendants therefore argue Count III, and Counts VI through XII should be automatically dismissed.

The 6/28/18 Order arguably only gave Plaintiff limited leave to amend.  However, the deadline to add parties and amend pleadings has not yet passed.  See Second Amended Rule 16 Scheduling Order, filed 1/29/19 (dkt. no. 55), at ¶ 5 (stating the deadline is 6/14/19).  If Plaintiff filed a motion for leave to add claims beyond those asserted in the First Amended Complaint and the Errata, the motion would be timely, and leave to amend would likely be granted because of the liberal amendment standard.  See Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires.").  To facilitate the timely resolution of Plaintiff's claims on the merits, and in the interest of judicial economy, this Court denies Defendants' request to dismiss automatically all claims in the Second Amended Complaint that were not asserted in the First Amended Complaint and Errata.

Plaintiff agrees that Count IV should be dismissed with prejudice.  [Mem. in Opp. at 16.]  In light of Plaintiff's concession, Count IV is dismissed with prejudice.  The remainder of Plaintiff's claims will be addressed on the merits.

## II. **Standing**

As previously noted, all of Plaintiff's claims are related to disputes regarding the Mortgage on the Property. This Court first turns to the issue of whether Plaintiff has standing to pursue each claim, either in his individual capacity

10

("Plaintiff Individually") or in his capacity as the Estate's Special Administrator ("Plaintiff as Administrator").

### A.   Contract-Based Claims

The following claims in the Second Amended Complaint relate to liability on the Mortgage loan and will be referred to as the "Contract-Based Claims": Count III (breach of contract); Count V (promissory estoppel); Count VI (conversion); Count VIII (quiet title); and Count XII (RESPA violations).

### 1.   Plaintiff Individually

For purposes of the instant Motion, this Court accepts the factual allegations of the Second Amended Complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (stating that, "for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true"). Thus, this Court assumes that Plaintiff Individually, was not a party to the original Mortgage. See Second Amended Complaint at ¶ 17 (stating M.A. Chavez entered into the Mortgage). Plaintiff Individually purportedly became a party to the Mortgage by virtue of a "step up rate contract." [Id. at ¶ 81.] Based on representations that Plaintiff's counsel made at the hearing on the Motion, the "step up rate contract" was similar to a loan modification agreement. However, the allegations of the Second Amended Complaint are insufficient to support that position.

Plaintiff also argues that, through the administration of the Estate, Plaintiff Individually has assumed liability for the Mortgage loan.  Such an agreement is only enforceable if it is in writing.  See Haw. Rev. Stat. § 656-1(2), (4).[3]  The factual allegations of the Second Amended Complaint do not support a reasonable inference that such a writing exists.

The United States Supreme Court has described the elements of standing as follows:

> First, the plaintiff must have suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical.  Second, there must

---

[3] Section 656-1 states, in pertinent part:

> No action shall be brought and maintained in any of the following cases:
>
> . . . .
>
> (2) To charge any person upon any special promise to answer for the debt, default, or misdoings of another; [or ]
>
> . . . .
>
> (4) Upon any contract for the sale of lands, tenements, or hereditaments, or of any interest in or concerning them;
>
> unless the promise, contract, or agreement, upon which the action is brought, or some memorandum or note thereof, is in writing, and is signed by the party to be charged therewith, or by some person thereunto by the party in writing lawfully authorized. . . .

> be a causal connection between the injury and the
> conduct complained of — the injury has to be
> fairly traceable to the challenged action of the
> defendant, and not the result of the independent
> action of some third party not before the court.
> Third, it must be likely, as opposed to merely
> speculative, that the injury will be redressed by
> a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)

(brackets, ellipses, footnote, citations, and internal quotation

marks omitted).  A "particularized" injury "must affect the

plaintiff in a personal and individual way."  Id. at 560 n.1.

Because Plaintiff Individually has no obligation under

either the Mortgage or the underlying loan, the actions and

omissions that gave rise to the Contract-Based Claims have not

caused an "actual or imminent," "concrete and particularized"

injury to him.  See id. at 560.  The claims by Plaintiff

Individually in the Contract-Based Claims therefore fail to

state plausible claims for relief because he lacks standing to

pursue them.  See Iqbal, 556 U.S. at 678 ("To survive a motion

to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible

on its face.'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S.

544, 570 (2007))).  The claims by Plaintiff Individually in the

Contract-Based Claims are dismissed without prejudice because it

is arguably possible for Plaintiff Individually to plead

additional factual allegations that would support a plausible

basis for standing.  See Hoang v. Bank of Am., N.A., 910 F.3d 1096, 1102 (9th Cir. 2018) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." (citation and quotation marks omitted)).

### 2.   Plaintiff as Administrator

Based on the factual allegations of the Second Amended Complaint, the Estate remains liable on the Mortgage and the underlying loan.  See Second Amended Complaint at ¶ 7 (alleging Plaintiff "is empowered to . . . negotiate the details of the mortgage"), ¶ 18 (alleging that, "[a]t all times, [Plaintiff] paid the mortgage for the Property").  Thus, the alleged acts and omissions that form the basis of the Contract-Based Claims allegedly caused, or are causing, harm to the Estate.  See, e.g., id. at ¶ 46 (alleging the improper fines and late fees associated with the Mortgage "continue until to this day").  The Contract-Based Claims therefore plead a sufficient factual basis to support a plausible standing argument by Plaintiff as Administrator.  Thus, Defendants' argument that Plaintiff as Administrator lacks standing to bring the Contract-Based Claims is rejected.

### B.   Non-Contract Claims

The following claims do not relate to liability on the Mortgage loan and will be referred to as the "Non-Contract

Claims": Count I (UDAP); Count II (FDCPA violations); Count VII (interference with prospective advantage); Count IX (fraud); Count X (IIED); and Count XI (NIED).

## 1.   **Plaintiff Individually**

The acts which form the bases of the Non-Contract Claims occurred while Plaintiff was acting as the Estate's Special Administrator.  However, the damages that allegedly resulted from those acts were, or are being, suffered by Plaintiff Individually.  See, e.g., id. at ¶ 56 (alleging Defendants "repeatedly sent, on numerous occasions over multiple years, individuals to harass [Plaintiff] regarding the status of his mortgage for the Property"). Thus, the Non-Contract Claims plead a sufficient factual basis to support a plausible standing argument by Plaintiff Individually.  Defendants' argument that Plaintiff Individually lacks standing to pursue the Non-Contract Claims is rejected.

## 2.   **Plaintiff as Administrator**

The acts and omissions that form the bases of the Non-Contract Claims occurred after M.A. Chavez's death.  See, e.g., id. at ¶ 34 (alleging the pattern of harassment began in 2011 and continued through 2017), ¶ 51 (alleging Defendants attempted to foreclosure upon the Property in 2017). M.A. Chavez therefore was not injured by those acts, and the Estate does not have standing to pursue claims based on those

acts.  Further, Plaintiff as Administrator does not have standing to pursue an IIED claim or a NIED claim because a legal entity, such as the Estate, cannot suffer emotional distress.  Cf. Doran v. Wells Fargo Bank, Civil No. 11-00132 LEK-BMK, 2011 WL 2160643, at *15 & n.9 (D. Hawai`i May 31, 2011) (citing cases and ruling that the plaintiffs could assert an IIED claim individually, but could not assert the claim as trustees on behalf of their family trust).

The claims asserted by Plaintiff as Administrator in the Non-Contract Claims do not state plausible claims for relief because of the lack of standing.  Those claims are therefore dismissed, and the dismissal is with prejudice because it is not possible for Plaintiff as Administrator to cure this defect by amendment.

## III. Sufficiency of the Remaining Claims

### A.   Claims by Plaintiff as Administrator

#### 1.   Breach of Contract (Count III)

Under Hawai`i law, "[t]he elements of a breach of contract claim are '(1) the contract at issue; (2) the parties to the contract; (3) whether plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by defendants; and (5) when and how defendants allegedly breached the contract.'"  Marine Lumber Co. v. Precision Moving & Storage Inc., CIVIL 16-00365 LEK-RLP, 2017 WL

1159093, at *6 (D. Hawai`i Mar. 28, 2017) (quoting Liberty Mut.
Ins. Co. v. Sumo-Nan LLC, Civil No. 14-00520 DKW-KSC, 2015 WL
2449480, at *3 (D. Hawai`i May 20, 2015)).

The contract at issue in Count III is the Mortgage.
[Second Amended Complaint at ¶ 76.]  The parties to the Mortgage
were M.A. Chavez and American Home Mortgage, with AHMSI acting
as the loan servicer.  [Id. at ¶ 17.]  The Mortgage was assigned
to Deutsche Bank, [id. at ¶ 19,] and both AHMSI and Ocwen acted
as the loan servicer on Deutsche Bank's behalf, [id. at ¶ 16].
The Second Amended Complaint also alleges Plaintiff as
Administrator performed his obligations under the Mortgage "by
making prompt and complete mortgage payments" and by doing
"everything Defendants asked him to do."  [Id. at ¶ 77.]  The
Second Amended Complaint alleges Defendants failed to comply
with the acceleration provision of the Mortgage, and Defendants
breached the Mortgage contract by rejecting the Western Union
payment which Plaintiff as Administrator attempted to use to
cure the alleged deficiency in the account.  [Id. at ¶ 78.]  The
acceleration provision and the circumstances of Defendants'
alleged breach are also described in the Second Amended
Complaint.  [Id. at ¶¶ 35-45.]

Thus, the Second Amended Complaint pleads sufficient
factual allegations supporting the breach of contract claim by
Plaintiff as Administrator.  The Motion is denied as to

17

Defendants' request to dismiss the claim by Plaintiff as Administrator in Count III.

### 2. Promissory Estoppel (Count V)

Under Hawai`i law,

> [t]he elements of promissory estoppel include: (1) a promise; (2) at the time the promisor made the promise, the promisor must foresee that the promisee would rely upon the promise (**foreseeability**); (3) the promisee does in fact **rely** upon the promisor's promise; and (4) enforcement of the promise is necessary to avoid **injustice**."

Furuya v. Ass'n of Apartment Owners of Pac. Monarch, Inc., 137 Hawai`i 371, 387, 375 P.3d 150, 166 (2016) (some alterations and internal quotation marks omitted) (emphases in Furuya). Plaintiff as Administrator pleads sufficient factual allegations to support each element of his promissory estoppel claim. See Second Amended Complaint at ¶¶ 83-87. Issues such as whether those promises were actually made to Plaintiff and whether Plaintiff's reliance on those promises was foreseeable are not for this Court to decide on a motion to dismiss. The Motion is denied as to Defendants' request to dismiss the claim by Plaintiff as Administrator in Count V.

### 3. Conversion (Count VI)

This district court has stated:

> Hawaii defines conversion as "[a]ny distinct act of dominion wrongfully exerted over one's property in denial of his right or inconsistent with it." Tsuru v. Bayer, 25 Haw. 693, 696 (Haw.

> Terr. 1920) (internal citation and quotation
> omitted). The elements of a conversion claim
> are: "'(1) [a] taking from the owner without his
> consent; (2) an unwarranted assumption of
> ownership; (3) an illegal use or abuse of the
> chattel; and (4) a wrongful detention after
> demand.'" Pourny v. Maui Police Dep't, 127 F.
> Supp. 2d 1129, 1146 (D. Haw. 2000) (Kay, J.)
> (quoting Tsuru, 2[5] Haw. at 696).

JN Grp. Holdings, Inc. v. Ryan, Civ. No. 17-00375 ACK-KJM, 2018
WL 485937, at *6 (D. Hawai`i Jan. 19, 2018) (alterations in
JN Grp.).

Plaintiff as Administrator alleges the Mortgage had a
surplus in its escrow account. Although AHMSI representatives
told Plaintiff the funds would be applied to the Mortgage,
neither AHMSI nor Ocwen applied the surplus funds, nor were the
surplus funds returned to Plaintiff. [Id. at ¶¶ 22-28.] In
April 2011, when AHMSI first informed Plaintiff it intended to
foreclose upon the Property, the surplus was $16,313.68. [Id.
at ¶¶ 35, 38.] Plaintiff as Administrator alleges the failure
to either apply the surplus to the Mortgage or return it to him
in spite of his demands constitutes: a taking without his
consent; an unwarranted assumption of ownership of the funds;
and illegal maintenance or detention of the surplus funds. [Id.
at ¶¶ 89-91.]

Defendants argue Count VI fails to state a plausible
conversion claim because a lender has no authority to redirect a
borrower's funds held in escrow. However, Defendants cite no

19

Hawai`i case law or statute supporting their position, nor is this Court aware of any.  If Defendants' position is that the terms of the Mortgage preclude such redirection, they have not identified what provision of the Mortgage they rely upon.  This Court therefore concludes the allegations of the Second Amended Complaint are sufficient to plead a plausible conversion claim. The Motion is denied as to Defendants' request to dismiss the claim by Plaintiff as Administrator in Count VI.

### 4.   Quiet Title (Count VIII)

In its review of an order granting partial summary judgment, the Hawai`i Supreme Court stated:

> In an action to quiet title, the burden is on the plaintiff to prove title in and to the land in dispute, and, absent such proof, it is unnecessary for the defendant to make any showing.  State v. Zimring, 58 Haw. 106, 110, 566 P.2d 725, 729 (1977) (citations omitted). . . . While it is not necessary for the plaintiff to have perfect title to establish a prima facie case, he must at least prove that he has a substantial interest in the property and that his title is superior to that of the defendants. Shilts v. Young, 643 P.2d 686, 689 (Alaska 1981).

Maui Land & Pineapple Co. v. Infiesto, 76 Hawai`i 402, 407-08, 879 P.2d 507, 512-13 (1994) (some citations omitted).  Plaintiff alleges he is the owner of the Property and he is, and at all relevant times has been, able to tender the amount of the outstanding amount on the Mortgage loan.  However, Defendants'

wrongful acts have placed encumbrances on the Property, creating a cloud on the title.  [Second Amended Complaint at ¶¶ 104-05.]

Defendants argue the quiet title claim fails because it is well-settled that a borrower does not have standing to challenge assignments of mortgages because the borrower is neither a party to nor a third-party beneficiary of the assignment.  See, e.g., Lynch v. Fed. Nat'l Mortg. Ass'n, Case No. 16-CV-00213-DKW-RT, 2019 WL 1905157, at *9 (D. Hawai`i Apr. 29, 2019) (citing U.S. Bank Nat'l Ass'n v. Salvacion, 338 P.3d 1185, 1190 (Haw. Ct. App. 2014) (summarizing cases and concluding that, "[t]ypically, borrowers do not have standing to challenge the validity of an assignment of its loans because they are not parties to the agreement . . .")).[4]  However, Count VIII is not necessarily based on the allegedly improper assignment of the Mortgage.  See, e.g., Second Amended Complaint at ¶ 20 ("robo-signer" allegation).  This Court interprets Count VIII as arising from the allegedly improper encumbrances that Defendants placed on the Property through their attempts to

---

[4] The Hawai`i Supreme Court "adopt[ed] the majority rule followed in Salvacion and h[e]ld that a third party unrelated to a pooling and servicing agreement [("PSA")] lacks standing to challenge assignments based on alleged violation of the PSA's terms unless the violation would render the assignment void." U.S. Bank N.A. v. Mattos, 140 Hawai`i 26, 35, 398 P.3d 615, 624 (2017).  However, the holding was limited to context of judicial foreclosures.  Id.

foreclose upon the Property.  See id. at ¶¶ 35, 51-52.  So construed, Count VIII sufficiently alleges Defendants attempted to assert title to the Property, and that Plaintiff's title is superior to Defendants' asserted title.

Count VIII therefore pleads a plausible quiet title claim.  The Motion is denied as to Defendants' request to dismiss the claim by Plaintiff as Administrator in Count VIII.

### 5.  RESPA Violations (Count XII)

The Second Amended Complaint alleges Ocwen was a servicer of M.A. Chavez's Mortgage for Deutsche Bank.  [Id. at ¶ 16.]  Thus, the Second Amended Complaint alleges Ocwen is a loan servicer for purposes of RESPA.  See 12 U.S.C. § 2605(i)(2) ("The term 'servicer' means the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan).").

Further, the Second Amended Complaint alleges Ocwen violated RESPA when it failed to provide timely responses to four letters that constituted qualified written requests ("QWRs") by Plaintiff as Administrator.  [Second Amended Complaint at ¶¶ 119-21 (citing 12 U.S.C. § 2605(e)(1)(A), (e)(1)(B), (e)(2)).]  However, this district court has stated:

> In order to state a claim under RESPA, a
> plaintiff must allege facts showing that a
> specific defendant violated a RESPA provision and
> that plaintiff suffered "actual damages . . . as
> a result" of that defendant's failure to comply

with that provision.  12 U.S.C. § 2605(f); <u>see</u>
<u>Obeng-Amponsah v. Chase Home Fin. LLC</u>, 624 Fed.
Appx. 459, 461 (9th Cir. 2015) (affirming
dismissal of RESPA claim where the plaintiff's
"allegations do not connect the alleged failure
to respond to his qualified written requests with
any actual damages"); <u>see also</u> <u>Petrovich v. Ocwen</u>
<u>Loan Servicing, LLC</u>, 2015 WL 3561821, at *2 (N.D.
Cal. June 8, 2015) ("To state a claim under
RESPA, a plaintiff must allege that (1) a
defendant violated RESPA; and (2) that
defendant's violation caused the plaintiff
monetary damages."); <u>Menashe v. Bank of New York</u>,
850 F. Supp. 2d 1120, 1134 (D. Haw. 2012)
("Because damages are a necessary element of a
RESPA claim, failure to plead damages is fatal to
a RESPA claim.").

<u>Amina v. WMC Fin. Co.</u>, 329 F. Supp. 3d 1141, 1163 n.21 (D.

Hawai`i 2018) (alteration in <u>Amina</u>) (some citations omitted),

*appeal filed*, No. 19-15165 (9th Cir. Jan. 29, 2019).  Plaintiff

does not allege how Ocwen's failure to respond to the QWRs

caused him to suffer damages.  This portion of Count XII

therefore fails to state a plausible RESPA claim against Ocwen

by Plaintiff as Administrator.

The Second Amended Complaint also alleges Defendants

violated RESPA by wrongfully withholding the surplus.  [Second

Amended Complaint at ¶ 123.]  Although the Second Amended

Complaint alleges AHMSI is also a servicer of M.A. Chavez's

Mortgage for Deutsche Bank, [<u>id.</u> at ¶ 16,] it does not allege

how RESPA applies to Deutsche Bank.  Further, Count XII does not

allege what RESPA provision the withholding of the surplus

violates.  The portion of Count XII based on the alleged

withholding of the surplus also fails to state a plausible RESPA claim by Plaintiff as Administrator.

The claims by Plaintiff as Administrator in Count XII must therefore be dismissed.  However, the dismissal is without prejudice because it is arguably possible for Plaintiff as Administrator to cure the defects in Count XII by amendment.

**B.    Claims by Plaintiff Individually**

**1.    UDAP (Count I)**

**a.    Timeliness**

At the outset, the timeliness of the UDAP claim by Plaintiff Individually must be addressed.  The four-year statute of limitations period in Haw. Rev. Stat. § 480-24 applies to UDAP claims.  The discovery rule does not apply, but UDAP claims are subject to tolling based on fraudulent concealment.  See, e.g., Galima v. Ass`n of Apartment Owners of Palm Court ex rel. Bd. of Dirs., CIVIL 16-00023 LEK-KSC, 2018 WL 6841818, at *11 (D. Hawai`i Dec. 31, 2018) ("Galima 12/31/18 Order"), *recon. denied*, 2019 WL 1102188 (Mar. 8, 2019).  Thus, the portions of the claims by Plaintiff Individually in Count I that are based on acts or omissions which occurred more than four years before Plaintiff filed this action on April 6, 2016 are time-barred, unless tolling based on fraudulent concealment applies.

> "A statute of limitations may be tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that the

24

>plaintiff, acting as a reasonable person, did not
>know of its existence." Hexcel Corp. v. Ineos
>Polymers, Inc., 681 F.3d 1055, 1060 (9th Cir.
>2012).  Fraudulent concealment involves the
>actions taken by a liable party to conceal a
>known cause of action, and has been defined as
>"employment of artifice, planned to prevent
>inquiry or escape investigation, and mislead or
>hinder acquirement of information disclosing a
>right of action." Hancock v. Kulana Partners,
>LLC, 992 F. Supp. 2d 1053, 1062 (D. Haw. Jan. 10,
>2014) (quoting Au [v. Au], 626 P.2d [173,] 178)
>[(Haw. 1981)] (internal quotation marks and
>brackets omitted). . . .

Galima v. Ass`n of Apartment Owners of Palm Court ex rel. Bd. of

Dirs., CIVIL 16-00023 LEK-KSC, 2017 WL 1240181, at *16 (D.

Hawai`i Mar. 30, 2017) ("Galima 3/30/17 Order") (some

alterations in Galima 3/30/17 Order).[5]

The Second Amended Complaint does not plead any

allegations that would support a plausible argument that the

UDAP statute of limitations was tolled because of fraudulent

concealment.  The portions of the claims by Plaintiff

Individually in Count I based on acts and omissions that

occurred more than four years prior to April 6, 2016 are

---

[5] The Ninth Circuit in Hancock vacated the judgment and
remanded the case to this district court within instructions to
certify the following questions to the Hawai`i Supreme Court:
"1. Whether a claim relating to a forged deed is subject to the
statute of limitations for fraud?  2. Whether the recording of a
deed provides constructive notice in an action for fraud?"  692
F. App'x 329 (9th Cir. 2017).  The certified questions remain
pending before the supreme court.  See generally, Hancock,
CV 13-00198 DKW-RLP.

dismissed as time-barred.[6]  However, the dismissal is without
prejudice because it is arguably possible for Plaintiff
Individually to plead a factual basis supporting the application
of the discovery rule or tolling based on fraudulent
concealment.  The Court next turns to the issue of whether the
timely portions of the claims by Plaintiff Individually in
Count I state plausible UDAP claims.

> **b.**    **Sufficiency of the Timely Allegations**

Haw. Rev. Stat. § 480-2(d) states: "a consumer . . .
may bring an action based upon unfair or deceptive acts or
practices declared unlawful by this section."  For purposes of
Chapter 480, "'[c]onsumer' means a natural person who, primarily
for personal, family, or household purposes, purchases, attempts
to purchase, or is solicited to purchase goods or services or
who commits money, property, or services in a personal
investment."  Haw. Rev. Stat. § 480-1.  Plaintiff Individually
is a natural person, and he allegedly committed money to pay
M.A. Chavez's Mortgage as an investment in the Property for

---

[6] The Second Amended Complaint's factual allegations
regarding time-barred acts and omissions can be considered as
relevant background to the portions of the claims by Plaintiff
Individually that are based on acts and omissions within the
statute of limitations period.  Cf. Kosegarten v. Dep't of the
Prosecuting Attorney, 892 F. Supp. 2d 1245, 1263 (D. Hawai`i
2012) (discussing relevant time-barred background in the
consideration of a motion for summary judgment).

personal and/or family purposes.   See, e.g., Second Amended

Complaint at ¶ 8 (alleging Plaintiff and his sons built the

second house on the Property), ¶ 9 (alleging Plaintiff uses the

second house as a rental and intends to sell it eventually to

fund his retirement), ¶ 18 (alleging Plaintiff pays the Mortgage

on the Property).   Thus, the Second Amended Complaint

sufficiently alleges Plaintiff is a consumer for purposes of

Chapter 480.

The Hawai`i Supreme Court has stated:

> A practice "is unfair when it [1] offends
> established public policy and [2] when the
> practice is immoral, unethical, oppressive,
> unscrupulous or [3] substantially injurious to
> consumers." [Haw. Cmty. Fed. Credit Union v.]
> Keka, 94 Hawai`i [213,] 228, 11 P.3d [1,] 16
> [(2000)] (citation omitted).  [The plaintiff]
> need not allege that [the defendant]'s actions
> meet all three of these factors to assert an
> unfair act or practice.  See id. at 229, 11 P.3d
> at 17 (determining that the conduct in question
> was "unethical, oppressive, unscrupulous and
> substantially injurious to consumers," but not
> addressing whether the conduct offended public
> policy); Kapunakea Partners v. Equilon Enters.
> LLC, 679 F. Supp. 2d 1203, 1210 (D. Haw. 2009)
> (analogizing the three factors as applied to
> federal antitrust laws to application of HRS
> § 480-2 to determine "[a] practice may be unfair
> because of the degree to which it meets one of
> the criteria or because to a lesser extent it
> meets all three" (citation omitted)).

> . . . .

> . . . A deceptive act or practice is "(1) a
> representation, omission, or practice[] that
> (2) is likely to mislead consumers acting
> reasonably under the circumstances [where]

27

> (3) [] the representation, omission, or practice
> is material." Courbat v. Dahana Ranch, Inc., 111
> Hawai`i 254, 262, 141 P.3d 427, 435 (2006)
> (citation omitted).  A representation, omission,
> or practice is material if it "involves
> 'information that is important to consumers and,
> hence, likely to affect their choice of, or
> conduct regarding, a product.'" Id. (citation
> omitted).  The test to determine deceptiveness
> "is an objective one, turning on whether the act
> or omission 'is likely to mislead consumers,'
> . . . as to information 'important to consumers'
> . . . in making a decision regarding the product
> or service." Id. (citations omitted).  "[P]roof
> of actual deception is unnecessary." Rosa v.
> Johnston, 3 Haw. App. 420, 427, 651 P.2d 1228,
> 1234 (1982).

Hungate v. Law Office of David B. Rosen, 139 Hawai`i 394, 410-

11, 391 P.3d 1, 17-18 (2017) (some alterations in Hungate).

The timely allegations supporting the UDAP claim by

Plaintiff Individually include: a pattern that included sending

multiple individuals to the Property to harass Plaintiff;

[Second Amended Complaint at ¶ 34;] the on-going failure to

either apply the surplus to the Mortgage or return it to

Plaintiff; [id. at ¶ 39;] the on-going assessment of improper

fines and late fees; [id. at ¶ 46;] and filing a foreclosure

action in 2017, [id. at ¶ 51].  These allegations are sufficient

to allege a plausible claim that Defendants have engaged in

unfair practices.  See Keka, 94 Hawai`i at 228, 11 P.3d at 16.

The portions of the claims by Plaintiff Individually

in Count I that are based on acts and omissions which occurred

within four years prior to April 6, 2016 state plausible UDAP

claims.  The Motion is denied as to Defendants' request to
dismiss those portions of Count I.

### 2.  FDCPA Violations (Count II)

#### a.  Timeliness

A one-year statute of limitations period, the
discovery rule, and tolling based on fraudulent concealment
apply to FDCPA claims.  *See, e.g.*, *Galima* 12/31/18 Order, 2018
WL 6841818, at *14-15.  The incidents that occurred within the
FDCPA statute of limitations period include the same incidents
discussed *supra* regarding the UDAP claim by Plaintiff
Individually, except that the portions of the FDCPA claim based
on the ongoing violations are limited to the violations that
occurred within one year prior to April 6, 2016.  The portions
of the FDCPA claim by Plaintiff Individually based on incidents
that occurred more than one year prior to April 6, 2016 are
time-barred unless the discovery rule or tolling based on
fraudulent concealment apply to those portions of the claim.

"[T]he requirements for equitable tolling based on
fraudulent concealment are similar under Hawai`i law and federal
law."  *Id.* at *15 (comparing *Galima* 3/30/17 Order, 2017 WL
1240181, at *16 (discussing *Au v. Au*, 63 Haw. 210, 215, 626 P.2d
173, 178 (1981)); with *Thorman v. Am. Seafoods Co.*, 421 F.3d
1090, 1091-92, 1094 (9th Cir. 2005)).  As noted *supra* regarding
the UDAP claim, the Second Amended Complaint does not plead

29

sufficient factual allegations to support a plausible argument
that the FDCPA statute of limitations was tolled because of
fraudulent concealment.

"[U]nder the federal discovery rule, the statute of
limitations applicable to a claim begins to run when the
plaintiff knew or reasonably should have known about the
defendant's act and that it was wrongful." Id. (citing Lyons v.
Michael & Assocs., 824 F.3d 1169, 1171 (9th Cir. 2016)).  The
incidents beyond the FDCPA statute of limitations period include
things such as harassment at the Property that occurred more
than one year before April 6, 2016 and the issuance of
acceleration notices that did not comply with the terms of the
Mortgage.  The Second Amended Complaint does not include any
allegations that would support a plausible argument that the
discovery rule delayed the date when the FDCPA statute of
limitations began to run.

The portions of the claims by Plaintiff Individually
in Count II based on acts and omissions that occurred more than
a year before April 6, 2016 are dismissed as time-barred.  The
dismissal is without prejudice because it is arguably possible
for Plaintiff Individually to plead a factual basis supporting
the application of the discovery rule or tolling based on
fraudulent concealment.  The Court next turns to the issue of

whether the timely portions of Count II state plausible FDCPA claims.

### b.   Sufficiency of the Timely Allegations

Count II alleges Defendants are debt collectors, and they violated 15 U.S.C. §§ 1692d, 1692e, and 1692f(6). [Second Amended Complaint at ¶¶ 73-74.c.]  Section 1692d states: "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  Reading the Second Amended Complaint as a whole, Plaintiff Individually alleges Defendants "repeatedly sent, on numerous occasions over multiple years, individuals to harass Mr. Chavez regarding the status of his mortgage for the Property," and this pattern of harassment occurred "through 2017."  [Second Amended Complaint at ¶¶ 34, 56.]  Plaintiff Individually has pled sufficient factual allegations to state a plausible claim against Defendants for violation of § 1692d, as to the incidents that occurred no earlier than one-year before April 6, 2016.

Section 1692e states: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  The Second Amended Complaint alleges that, in 2017, Defendants attempted to foreclose on the Property, and the foreclosure action was part of a "bait-and-switch Defendants have engaged in for years,

31

where they tell Mr. Chavez conflicting and contradictory information and ignore his attempts to restore the *status quo ante*." [Id. at ¶ 51.]  However, the Second Amended Complaint does not describe the "conflicting and contradictory information" that this portion of Count II relies upon. Elsewhere in the Second Amended Complaint, Plaintiff describes some allegedly "false, deceptive, or misleading representations," such as: the representation by AHMSI that the surplus funds would be applied to the Mortgage; [id. at ¶ 26;] and the letter from Ocwen that allegedly stated the loan had "been charged off and the Property was released from liability for repayment," [id. at ¶ 65].  However, because Plaintiff Individually does not allege when these representations were made, this Court cannot determine whether the representations fall within the one-year period prior to the filing of this action, or thereafter.  Count II therefore fails to state a plausible claim by Plaintiff Individually that Defendants violated § 1692e.

Section 1692f states, in pertinent part:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:

. . . .

(6)  Taking or threatening to take any
nonjudicial action to effect dispossession
or disablement of property if–

(A)  there is no present right to
possession of the property claimed as
collateral through an enforceable
security interest[.]

The Second Amended Complaint alleges the 2017 foreclosure
attempt was based on the prior history of improper attempts to
accelerate the Mortgage loan and the improper imposition of
fines and late fees.  [Second Amended Complaint at ¶¶ 41-51.]
Plaintiff Individually has pled sufficient factual allegations
to state a plausible claim against Defendants for violation of
§ 1692f(6).

Thus, the § 1692e claim by Plaintiff Individually in
Count II is dismissed in its entirety, but the dismissal is
without prejudice because it is arguably possible to cure the
defects in that claim.  Dismissal is denied as to the § 1692d
claim and the § 1692f(6) claim by Plaintiff Individually in
Count II, to the extent that those portions of Count II are
based on acts and omissions which occurred no earlier than one-
year prior to April 6, 2016.

### 3.   Intentional Interference with Prospective Business Advantage (Count VII)

#### a.   Timeliness

A claim alleging intentional interference with
prospective business or economic advantage is subject to a two-

year statute of limitations.  One Wailea Dev., LLC v. Warren S. Unemori Eng'g, Inc., No. CAAP-13-0000418, 2016 WL 2941062, at *15 (Hawai`i Ct. App. Apr. 20, 2016) (citing Haw. Rev. Stat. § 657-7 (1993)).[7]  Plaintiff Individually alleges Defendants' conduct constituted intentional interference with his ability to rent and sell the second house on the Property.  [Second Amended Complaint at ¶¶ 100-01.]  The claim is timely as to acts and omissions, such as the 2017 foreclosure attempt, which occurred no earlier than two years prior to April 6, 2016.

Even assuming that the discovery rule and tolling based on fraudulent concealment apply to a claim for intentional interference with prospective business or economic advantage, the factual allegations in the Second Amended Complaint do not support the application of either.  Thus, the portion of Count VII based on acts and omissions that occurred more than two years prior to April 6, 2016 are time-barred.  That portion of Count VII is dismissed, but the dismissal is without prejudice because it is arguably possible for Plaintiff Individually to plead a factual basis supporting the application

---

[7] Section 657-7 states: "Actions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after, except as provided in section 657-13." The exceptions set forth in Haw. Rev. Stat. 657-13 are inapplicable to the instant case.

of the discovery rule or tolling based on fraudulent

concealment.  The Court next turns to the issue of whether the

timely portions of Count VII state plausible claims by Plaintiff

Individually for intentional interference with prospective

economic advantage.

### b.   Sufficiency of the Timely Allegations

The elements of an intentional interference with

prospective economic/business advantage claim are:

> (1) the existence of a valid business
> relationship or a prospective advantage or
> expectancy sufficiently definite, specific, and
> capable of acceptance in the sense that there is
> a reasonable probability of it maturing into a
> future economic benefit to the plaintiff;
> (2) knowledge of the relationship, advantage, or
> expectancy by the defendant; (3) a purposeful
> intent to interfere with the relationship,
> advantage, or expectancy; (4) legal causation
> between the act of interference and the
> impairment of the relationship, advantage, or
> expectancy; and (5) actual damages.

Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel, 113

Hawai`i 251, 268 n.18, 151 P.3d 732, 749 n.18 (2007) (some

citations omitted).  Plaintiff Individually alleges prospective

advantage or expectancy with potential renters of the second

house on the Property, which Defendants were aware of because of

AHMSI's inspection of the Property in February 2011.  See Second

Amended Complaint at ¶¶ 9, 31, 96.  He also alleges Defendants

wrongfully encumbered the Property, which prevents him from

renting or selling the second house.  [Id. at ¶ 59.]  Further,

this was purposeful and intentional interference, which has caused Plaintiff Individually to suffer actual damages.  See id. at ¶¶ 100-02.  Plaintiff Individually therefore pleads a plausible claim for intentional interference with prospective economic advantage based on actions and omissions that occurred no earlier than two years before April 6, 2016.  The Motion is denied as to that portion of Count VII.

### 4.    Fraud (Count IX)

This district court has stated:

> Rule 9(b) imposes a heightened pleading standard on a party alleging fraud and requires the party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  "Averments of fraud must be accompanied by the 'who, what, when, where and how' of the misconduct charged." Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).  Rule 9(b) "demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations omitted).  Fraud claims, "in addition to pleading with particularity, also must plead plausible allegations.  That is, the pleadings must state 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the misconduct alleged].'" Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 566 (2007)).
>
> . . . When there are multiple defendants —

> Rule 9(b) does not allow a complaint to
> merely lump multiple defendants together but
> require[s] plaintiffs to differentiate their
> allegations when suing more than one
> defendant . . . and inform each defendant
> separately of the allegations surrounding
> his alleged participation in the fraud.  In
> the context of a fraud suit involving
> multiple defendants, a plaintiff must, at a
> minimum, identif[y] the role of [each]
> defendant[] in the alleged fraudulent
> scheme.

> Swartz v. KPMG LLP, 476 F.3d 756, 764–65 (9th
> Cir. 2007) (alterations in Swartz) (internal
> quotation marks and citations omitted); see also
> Meridian Project Sys., Inc. v. Hardin Constr.
> Co., 404 F. Supp. 2d 1214, 1226 (E.D. Cal. 2005)
> ("When fraud claims involve multiple defendants,
> the complaint must satisfy Rule 9(b)
> particularity requirements for each defendant.")
> (citations omitted). . . .

Kriege v. Haw. Consumer Prot. Div., CIVIL NO. 16-00324 DKW-KJM,

2018 WL 1278186, at *5–6 (D. Hawai`i Mar. 12, 2018) (some

alterations in Kriege).

Count IX alleges "Defendants made numerous false

representations to [Plaintiff], as described" previously in the

Second Amended Complaint.  [Second Amended Complaint at ¶ 108.]

Plaintiff Individually alleges some specific representations

that he contends were false, such as the promises by AHMSI

representatives that it would apply the surplus to the Mortgage

and the "charged off" letter from Ocwen.  [Id. at ¶¶ 26, 65.]

However, even in those instances, Plaintiff Individually does

not identify who made those statements, nor does he identify

when the statements were made.  Thus, Plaintiff Individually has failed to plead "the who, what, when, where, and how of the misconduct charged."  <u>See</u> <u>Kearns</u>, 567 F.3d at 1124 (citation and internal quotation marks omitted).  Count IX is dismissed because it does not meet the heightened pleading standard for fraud claims.  The dismissal is without prejudice because it is arguably possible for Plaintiff Individually to cure the defects in Count IX.

### 5.   **IIED (Count X)**

#### a.   **Timeliness**

The two-year statute of limitations period in § 657-7, the discovery rule, and tolling based on fraudulent concealment apply to IIED claims.  <u>See, e.g.</u>, <u>Galima</u> 12/31/18 Order, 2018 WL 6841818, at *12.  As noted previously, the Second Amended Complaint does not plead sufficient factual allegations to support a plausible argument that either the discovery rule or tolling based on fraudulent concealment delayed the date when the two-year statute of limitations period began to run.  Thus, the portion of the claims by Plaintiff Individually in Count X based on acts and omissions that occurred more than two years prior to April 6, 2016 is time-barred.  That portion of Count X is dismissed, but the dismissal is without prejudice because it is arguably possible for Plaintiff Individually to plead a factual basis supporting the application of the discovery rule

38

or tolling based on fraudulent concealment.  The Court next
turns to the issue of whether the timely portion of Count X
states a plausible IIED claim by Plaintiff Individually.

### b.   Sufficiency of the Timely Allegations

        The timely allegations include the following actions
that occurred during, or after, the two-year period before
April 6, 2016: a pattern of harassing Plaintiff Individually at
the Property; the failure to apply or return the surplus; the
assessment of improper fines and late fees; and the initiation
of the 2017 foreclosure action.  All of these actions and
omissions were intentional.  In addition, Plaintiff Individually
alleges Defendants' conduct caused him to suffer extreme
emotional distress.  [Second Amended Complaint at ¶ 113.]
"Specifically, [Plaintiff] has suffered great anxiety and
stress, and continues to suffer to this day.  Defendants'
conduct has negatively affected [his] family and caused him
extreme depression, fear, anxiety, frustration, sleepless
nights, heart trouble, blood pressure, and muscle spasms."
[Id.]

        The elements of an IIED claim are: "1) that the act
allegedly causing the harm was intentional or reckless, 2) that
the act was outrageous, and 3) that the act caused 4) extreme
emotional distress to another."  Young v. Allstate Ins. Co., 119
Hawai`i 403, 429, 198 P.3d 666, 692 (2008).  "The term

'outrageous' has been construed to mean without cause or excuse and beyond all bounds of decency." Enoka v. AIG Haw. Ins. Co., 109 Hawai`i 537, 559, 128 P.3d 850, 872 (2006) (citation and internal quotation marks omitted)). "The question whether the actions of the alleged tortfeasor are unreasonable or outrageous is for the court in the first instance, although where reasonable people may differ on that question it should be left to the jury." Young, 119 Hawai`i at 429, 198 P.3d at 692 (citation and quotation marks omitted). Plaintiff Individually has pled sufficient factual allegations such that reasonable people could differ on the issue of whether Defendants' conduct is outrageous. Count IX therefore pleads a plausible IIED claim by Plaintiff Individually as to acts and omissions by Defendants during the two-year period prior to April 6, 2016, or thereafter. The Motion is denied as to that portion of Count X.

## 6. **NIED (Count XI)**

The NIED claim by Plaintiff Individually is based on the allegation that "Defendants negligently breached their contract with" him. [Second Amended Complaint at ¶ 115.] This Court has ruled that, based on the allegations of the Second Amended Complaint, Plaintiff Individually is not a party to the Mortgage on the Property and did not enter into a contract to assume liability for the Mortgage loan. Further, there is no writing showing that Plaintiff Individually has such liability

40

because of the Estate.  <u>See</u> *supra* Discussion § II.A.  Because
the NIED claim by Plaintiff Individually is premised upon a
non-existent contractual relationship between Defendants and
Plaintiff Individually, the claim is not plausible.  Count XI is
therefore dismissed, but the dismissal is without prejudice
because it is arguably possible for Plaintiff Individually to
cure the defects in his NIED claim by amendment.

## IV.   <u>Summary and Leave to Amend</u>

Count IV is DISMISSED WITH PREJUDICE by agreement of
the parties.

Defendants' Motion is GRANTED insofar as:

-the claims by Plaintiff Individually in Counts III, V, VI,
VIII, and XII are DISMISSED WITHOUT PREJUDICE because he lacks
standing;

-the claims by Plaintiff as Administrator in Counts I, II, VII,
IX, X, and XI are DISMISSED WITH PREJUDICE because he lacks
standing;

-the claim by Plaintiff as Administrator in Count XII is
DISMISSED for failure to state a claim upon which relief can be
granted;

-the claim by Plaintiff Individually in Count IX is DISMISSED on
the ground that the claim does not meet the heightened pleading
standard for fraud claims;

-the portion of Count II alleging a § 1692e claim by Plaintiff
Individually is DISMISSED for failure to state a claim;

-the claim by Plaintiff Individually in Count XI is DISMISSED
for failure to state a claim; and

-the portions of the claims by Plaintiff Individually in
Counts I, II, VII, and X that are based on acts and omissions

which occurred outside of the applicable limitations periods are DISMISSED AS UNTIMELY.

Defendants' Motion is DENIED insofar as:

-the dismissal of the claims by Plaintiff as Administrator in Count XII is WITHOUT PREJUDICE;

-the dismissal of the claims by Plaintiff Individually in Counts II (§ 1692e claim only), III, V, VI, VIII, IX, XI, and XII is WITHOUT PREJUDICE

-the dismissal of the untimely portions of the claims by Plaintiff Individually in Counts I, II (§ 1692d claim and § 1692f(6) claim only), VII, and X is WITHOUT PREJUDICE;

-dismissal is denied as to the claims by Plaintiff as Administrator in Counts III, V, VI, and VIII; and

-dismissal is denied as to the timely portions the claims by Plaintiff Individually in Counts I, II (§ 1692d claim and § 1692f(6) claim only), VII, and X.

If Plaintiff seeks to file a third amended complaint, he must first file a motion seeking leave and attach a proposed amended complaint with the claims and allegations highlighted to indicate what Plaintiff seeks to amend and/or add. If Plaintiff chooses to file a motion for leave to amend, he must do so by June 14, 2019, unless he obtains an amendment of the current scheduling order.

## CONCLUSION

On the basis of the foregoing, Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, filed January 23, 2019, is HEREBY GRANTED IN PART AND DENIED IN PART, as set forth in Discussion § IV.

Plaintiff is CAUTIONED that the filing of any motion for reconsideration of this Order will not affect the filing deadline for the motion for leave to amend.  Defendants are required to file an answer to the remaining portions of the Second Amended Complaint by **June 28, 2019**, unless Plaintiff files a motion for leave to amend.  Defendant will, in that case, not have to file an answer until the magistrate judge rules on whether Plaintiff will be permitted to file a third amended complaint.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, May 31, 2019.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

LUIS C. CHAVEZ VS. DEUTSCHE BANK NATIONAL TRUST CO., ET AL;
CV 17-00446 LEK-RT; ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT