IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| LUIS C. CHAVEZ, Individually and as Special Administrator of the Estate of Marcario Araujo Chavez,<br><br>        Plaintiff,<br><br>vs.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY; OCWEN LOAN SERVICING, LLC; AMERICAN HOME MORTGAGE SERVICING, INC.; JOHN DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; DOE ENTITIES 1-10; DOE GOVERNMENTAL UNITS 1-10,<br><br>        Defendants. | Civil No. 17-00446-LEK-RT<br><br>**DECLARATION OF SALLY R. TORRES** |

**DECLARATION OF SALLY R. TORRES**

        I, Sally R. Torres, do declare under penalty of law that the following is true and correct:

        1.    I am employed as a Senior Loan Analyst by Ocwen Financial Corporation, LLC ("Ocwen Financial"), whose indirect subsidiary is PHH Mortgage Corporation ("PHH"), successor by merger to Ocwen Loan Servicing, LLC ("Ocwen Loan Servicing").  PHH is the current loan servicer for Plaintiff

Deutsche Bank National Trust Company, as Trustee for American Home Mortgage

Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates Series 2007-3,

erroneously sued as "Deutsche Bank National Trust Company" ("Deutsche Bank,

Trustee"). In such capacity, I am authorized to make this declaration regarding the

loan described below (the "Loan"). If called to testify in this matter, I would

testify under oath as to the following:

2.      I have access to and am familiar with PHH's books and records

regarding the Loan, including PHH's servicing records and copies of the applicable

loan documents. I am familiar with the manner in which PHH maintains its books

and records, including computer records relating to the servicing of the Loan.

PHH's records are made at or near the time of the occurrence of the matters set

forth in such records, by an employee or representative with knowledge of the acts

or events recorded. Such records are obtained, kept, and maintained by PHH in the

regular course of PHH's business. PHH relies on such records in the ordinary

course of its business. I have worked in the mortgage loan servicing industry for

approximately nineteen years.

3.      On or about March 7, 2007, Macario Araujo Chavez

("Borrower"), made and delivered in favor of American Home Mortgage an

*Adjustable Rate Note* in the original principal amount of $650,000.00 (the "Note").

The Note is secured by that certain mortgage, given by Borrower in favor of

Mortgage Electronic Registration Systems, Inc. ("MERS") solely as nominee for

AHM, its successors and assigns, dated March 7, 2007 and recorded in the Bureau

of Conveyances, State of Hawai`i ("Bureau ") on March 14, 2007 as Document No.

2007-046460 ("Mortgage").  The Mortgage encumbers real property located at 952

Paipala Place, Makawao, Hawai`i 96768, Tax Map Key No. (2) 2-4-040-039

("Property"), which is more fully described in Exhibit A attached to the Mortgage.

A true and correct certified copy of the Mortgage is attached hereto as Exhibit "I".

      4.    As part of the Loan Borrower signed an Occupancy

Certification dated February 22, 2007, a true and accurate copy is attached hereto

as Exhibit "C".

      5.    Borrower also signed an Occupancy Agreement dated March 7,

2007, a true and accurate copy attached hereto as Exhibit "D".

      6.    Under the Note and Mortgage, Borrower was required to make

regular periodic payments of principal and interest amount commencing on May 1,

2007.

      7.    The beneficial interest in the Loan was transferred to Deutsche

Bank on May 1, 2007.  At that time, M. Chavez was not in default of his loan.

      8.    Written notice of the default under the Note and Mortgage was

sent to Borrower, advising that failure to cure the default would result in the

acceleration of the entire balance outstanding under the terms of the Note and

Mortgage, and advising of the right to reinstate after acceleration. The first notice of default is dated August 13, 2008, a true and correct copy of this written notice of default is attached as Exhibit "P". This default was cured until later notices of default in 2010 and 2011. True and accurate copies of these notices of default are attached as Exhibits "Q" and "R".

9.      The last regular monthly payment applied on the Loan was on November 8, 2010 in the amount of $4,094.29.

10.     The last credit applied on the Loan was on March 28, 2011 in the amount of $2,445.00.

11.     As of the date of this declaration Borrower, Borrower's Estate and Plaintiff Luis C. Chavez have not cured or tendered the amount of the debt.

12.     American Home Mortgage Servicing, Inc. ("AHMSI") and Homeward Residential, Inc. ("Homeward")(collectively "Prior Servicers") serviced the Loan until March, 2013.

13.     Ocwen Loan Servicing serviced the Loan from March, 2013 until it merged with and into PHH on June 1, 2019.

14.     An *Assignment of Mortgage* to MERS, as nominee for American Home Mortgage Acceptance, Inc. was later recorded on November 14, 2008 in the Bureau as Document No. 2008-174316. A true and correct certified copy is attached as Exhibit "E".

15.     A *Corporate Assignment of Mortgage* to Deutsche Bank National Trust Company, as Trustee for American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates Series 2007-3 was recorded on March 13, 2017 in the Bureau as Document No. A-62810275.  A true and correct certified copy is attached hereto as Exhibit "F".

16.     A true and accurate copy of selected portions of a facsimile transmission sent by Luis Chavez is attached hereto as Exhibit "J".

17.     Attached as Exhibit "K" is a true and correct copy of a purported Residential Lease dated January 1, 2000 between Macario A. Chavez, as landlord, and Luis C. Chavez, as tenant, sent by Luis Chavez.

18.     Deutsche Bank has not given its consent to the transfer of Borrower's interest to his son or to any other entity.

19.     Homeward and Ocwen retained an independent company, Altisource, to conduct exterior inspections of the Property.  This is standard procedure to insure a property secured by a non-performing loan is not vacant or abandoned.

20.     I am unaware of any qualified written requests made by Borrower or anyone on his behalf on the Loan.  PHH's records include and incorporate records for the Loan obtained from Ocwen Loan Servicing and the Prior Servicers.  The records obtained by PHH from the Prior Servicers are kept

and maintained by PHH in the ordinary course of its business for the purpose of

maintaining an accounting of payments received, expenses incurred, and amounts

advanced with regard to the Loan, and such records are relied upon by PHH in the

regular course of its business. The information regarding the Loan transferred to

PHH from the Prior Servicers has been validated in many ways, including, but not

limited to, going through a due diligence phase, review of hard copy documents,

and review of the payment history and accounting of other fees, costs, and

expenses charged to the Loan by Prior Servicers.  It is PHH's regular practice, after

these phases are complete, to receive records from prior servicers and integrate

these records into PHH's business records at the time of acquisition.  Once

integrated, PHH maintains and relies on these business records in the ordinary

course of its mortgage loan servicing business.

      21.    Based upon my occupational experience in the loan servicing

industry, I know that loan servicers follow an industry-wide standard on how to

keep and maintain business records for the mortgage loans they are servicing,

which record-keeping is part of the regularly conducted activity of loan servicers.

Upon information and belief, Prior Servicers followed the industry-wide standard

of making records for the Loan at or near the time of the occurrence of the matters

set forth in such records, by an employee or representative with knowledge of the

acts or events recorded, and such records were obtained, kept, and maintained by

Prior Servicers in the regular course of Prior Servicers' business.  It is an industry-wide standard for the type of loan information and regular maintenance of loan information, including but not limited to the accounting under generally accepted principles for each mortgage loan, to be standard and computerized.  Such standard processes were used by Prior Servicers to keep an accounting for the Loan.  PHH relies on such records in the ordinary course of its business.  Based on my review of the records, the standard processes described above, and on my own independent review of the Loan documents, the prior records for the Loan received from the Prior Servicers and incorporated into PHH's records are accurate.

22.    PHH's boarding process of the Prior Servicers' records has procedures that ensure the accuracy and trustworthiness of the records being boarded.  Generally, the policies and procedures that ensure accurate boarding require PHH to do the following: (1) verify with the Prior Servicers whether the servicing platforms are congruent or the procedures of boarding the loan are similar.  This process requires PHH to board a shell of the loan documents from the prior business records onto PHH's platform to determine whether it will be compatible with PHH's system.  (2) PHH receives all electronic data from the Prior Servicers.  (3) PHH confirms and verifies the receipt of all actual paper documents that need to be incorporated from the Prior Servicers into PHH's business records. PHH goes through the paper documents to confirm that they are congruent with

PHH's records.  (4) PHH does an extensive review of the Prior Servicers' records to determine whether there are any errors that arise from the pre-boarding of the documents, paper or electronic.  If there are any errors, PHH contacts the Prior Servicers to resolve all issues.

23.    PHH uses Mortgage Servicing Platform (MSP) (the "Computer Program") to automatically record and track mortgage payments received and also fees, costs, and expenses paid by PHH.  This type of record-keeping system is recognized as standard in the loan servicing industry.  When a mortgage payment is received by personal delivery or mail, the following procedure is used to process and apply the payment, and to create the records I reviewed: a human payment processor manually enters the payment information and application into the Computer Program at or near the time of receipt of the payment.  When a mortgage payment is received electronically, the following procedure is used to process and apply the payment, and to create the records I reviewed: the data concerning when the payment was received and how it was applied is automatically entered into the Computer Program at or near the time of receipt of the payment and is then viewable by me. Similarly, when fees, costs, and expenses are paid, such amounts are entered into the Computer Program at or near the time payment of such fees costs or expenses is made.  The payment history described in greater detail below is generated from the Computer Program.  The payment information and

application records are therefore created simultaneously in the Computer Program at the same time as the entry of the data.  The entries are made at or near the time that the payment is received.

24.     The record-making process described in the preceding paragraph is done in the regular course of PHH's business.  The payment data is kept in the Computer Program for purposes of referring to the information at a later date.  The Computer Program accurately records mortgage payments as well as all fees, costs, and advances paid by PHH when properly operated.  My review of the records gives me no reason to believe that the process for tracking and recording payments received and fees, costs, and advances paid by PHH in the Computer Program worked improperly with respect to the Loan.

25.     PHH maintains all the day to day loan documents, records, and accounting of payments on the Loan.  Under the terms of PHH's servicing arrangement, Deutsche Bank, Trustee does not generate, keep, or maintain any of the day to day documents for the Loan.  Deutsche Bank, Trustee does not participate in the inputting of accounting data, saving of business records, or communications with borrowers; rather, PHH performs such functions.

I do declare under penalty of perjury that the forgoing is true and correct.

Executed: Dallas, Texas, August 27, 2020.

_____
SALLY R. TORRES