UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

| | |
|---|---|
| LUIS C. CHAVEZ, INDIVIDUALLY, AND AS SPECIAL ADMINISTRATOR OF THE ESTATE OF MARCARIO ARAUJO CHAVEZ; <br><br> Plaintiff, <br><br> vs. <br><br> DEUTSCHE BANK NATIONAL TRUST COMPANY, OCWEN LOAN SERVICING, LLC, AMERICAN HOME MORTGAGE SERVICING, INC., JOHN DOES 1-10, DOE CORPORATIONS 1-10, DOE PARTNERSHIPS 1-10, DOE ENTITIES 1-10, DOE GOVERNMENTAL UNITS 1-10, <br><br> Defendants. | CIV. NO. 17-00446 LEK-RT |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

On August 28, 2020, Defendants Deutsche Bank National Trust Company, as Trustee for American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates Series 2007-3 ("Deutsche Bank"); Ocwen Loan Servicing, LLC ("Ocwen"); and Homeward Residential, Inc., formerly known as American Home Mortgage Servicing, Inc. ("AHMSI," collectively "Defendants") filed their Motion for Summary Judgment ("Motion"). [Dkt. no. 125.] Plaintiff Luis C. Chavez, Individually and as Special Administrator of the Estate of Macario Araujo Chavez ("Plaintiff"), filed his memorandum in opposition to the Motion

on September 25, 2020, and Defendants filed their reply on October 2, 2020.  [Dkt. nos. 134, 135.]  This matter came on for hearing on October 16, 2020.  On October 30, 2020, an entering order was issued informing the parties of the Court's rulings on the Motion.  [Dkt. no. 143.]  This Order supersedes that entering order.  Defendants' Motion is hereby granted, and summary judgment is entered in favor of Defendants as to all of Plaintiff's claims, for the reasons set forth below.

## BACKGROUND

The procedural history of this case is set forth in this Court's May 31, 2019 Order Granting in Part and Denying in Part Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint ("5/31/19 Order").  [Dkt. no. 61.[1]]  The operative pleading is the Third Amended Complaint, filed November 13, 2019.  [Dkt. no. 81.]  It alleges the following claims: 1) a claim alleging unfair and deceptive acts and practices ("UDAP"), in violation of Haw. Rev. Stat. § 480-2 ("Count I"); 2) a claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, ("Count II"); 3) breach of contract ("Count III"); 4) promissory estoppel  ("Count IV"); 5) conversion ("Count V"); 6) intentional interference with prospective economic advantage ("Count VI"); 7) a quiet title

---

[1] The 5/31/19 Order is also available at 2019 WL 2330885.

claim, pursuant to Haw. Rev. Stat. § 669-1 ("Count VII");

8) fraud ("Count VIII"); 9) intentional infliction of emotional

distress ("IIED" and "Count IX"); 10) negligent infliction of

emotional distress ("NIED" and "Count X"); and 11) a claim

alleging violations of the Real Estate Settlement Procedures Act

("RESPA"), 12 U.S.C. § 2601, *et seq.* ("Count XII").

The following evidence has been presented in

connection with the instant Motion.  In 1986, Plaintiff's family

began developing two separate houses on the property located at

952 Paipala Place, in Makawao, Hawai`i ("the Property").

[Defs.' Concise Statement of Facts in Supp. of Motion for

Summary Judgment ("Defs.' CSOF"), filed 8/28/20 (dkt. no. 126),

at ¶ 1.[2]]  On March 7, 2007, Plaintiff's father, Macario Araujo

Chavez ("M.A. Chavez"), obtained a $650,000 loan from American

Home Mortgage, secured by a mortgage on the Property ("the Loan"

_____

[2] Plaintiff did not file a responsive concise statement of
fact to Defendants' CSOF with his memorandum in opposition.
Plaintiff's concise statement of facts ("Plaintiff's CSOF") -
which was attached to his memorandum in opposition and not filed
as a separate document - only asserts what he believes to be the
undisputed facts of the case; he did not specifically admit or
deny each of the facts listed in Defendants' CSOF.  See Pltf.'s
CSOF, dkt. no. 134-1.  On October 5, 2020, Plaintiff filed a
request for leave to file a responsive concise statement, but
that request was denied in an October 15, 2020 entering order.
[Dkt. nos. 138, 140.]  Thus, pursuant to Local Rule 56.1(g), the
statements of material facts set forth in Defendants' CSOF are
deemed admitted, unless they are controverted by statements in
Plaintiff's CSOF.

and "the Mortgage"). Defs.' CSOF at ¶ 2; see also Defs. CSOF, Decl. of Sally R. Torres ("Torres Decl."), Exh. I (Mortgage).[3] M.A. Chavez used the proceeds from the Loan to pay of a prior loan, and he also received $100,000. [Defs.' CSOF at ¶ 6.]

When he obtained the Loan, M.A. Chavez certified that he would occupy the Property as his "principal residence," as required under federal law, and his "primary residence," as required under the terms of the Loan. Defs.' CSOF at ¶¶ 3-4; see also Torres Decl., Exh. C (Occupancy Certification), Exh. D (Occupancy Agreement). M.A. Chavez also acknowledged that the failure to use the Property as his primary residence would constitute a default. [Defs.' CSOF at ¶ 4.] Plaintiff asserts M.A. Chavez complied with the Occupancy Agreement and "did live [at the Property] until his death in 2010 and he considered Hawaii his home." [Pltf.'s CSOF at ¶ 9 (citing Pltf.'s CSOF, Aff. of Luis C. Chavez ("Pltf. Aff.") at ¶ 6).] Defendants dispute this, pointing to Plaintiff's deposition testimony that California was his parents' primary residence and to M.A. Chavez's death certificate, which listed an Orange County

---

[3] Sally Torres is a Senior Loan Analyst for Ocwen Financial Corporation, LLC ("Ocwen Financial"). PHH Mortgage Corporation ("PHH") is the successor by merger to Ocwen, and PHH is a subsidiary of Ocwen Financial. PHH is Deutsche Bank's current loan servicer. Ms. Torres is familiar with PHH's records, which include servicing records and loan documents for M.A. Chavez's Loan. [Torres Decl. at ¶¶ 1-2.]

address as M.A. Chavez's residence. [Reply CSOF at ¶ 9 (citing Defs.' CSOF, Decl. of David A. Nakashima ("Nakashima Decl."), Exh. A (excerpts of trans., vol. II, of Pltf.'s 6/26/20 depo. ("Pltf. Depo. vol. II")) at 186; Nakashima Decl., Exh. G (Certificate of Death)).[4]]

Plaintiff asserts he is the borrower in the Loan, having assumed the liability for the Mortgage and the underlying promissory note ("the Note") since 2007. He states his payments were accepted without objection. Plaintiff asserts Defendants were aware that he had assumed the Mortgage, as evidenced by the fact that the assumption was discussed and agreed to during the loan modification process. [Pltf.'s CSOF at ¶¶ 1-3 (citing Pltf. Aff. at ¶ 2).] Defendants dispute this, stating no loan assumption agreement was ever entered into, and they point out that the Mortgage payments came from a joint bank account shared by Plaintiff and M.A. Chavez, not necessarily from Plaintiff himself. [Defs.' concise statement of facts in supp. of reply ("Reply CSOF"), filed 10/2/20 (dkt. no. 136), at ¶¶ 1-3 (citing Reply CSOF, Suppl. Decl. of Sally R. Torres ("Torres Suppl. Decl.") at ¶ 2); Reply CSOF, Suppl. Decl. of David A. Nakashima

---

[4] Plaintiff also testified that his parents went back and forth between Hawai`i and California. [Nakashima Decl., Exh. A (Pltf. Depo. vol. II) at 186-88.] Plaintiff testified that M.A. Chavez "spent a lot of time in Hawai`i." [Id. at 188.]

("Nakashima Suppl. Decl."), Exh. U (further excerpts of Pltf. Depo. vol. II) at 217-19).]

Plaintiff states that, on November 17, 2008, he notified AHMSI, in writing, that he held title to the Property. [Pltf.'s CSOF at ¶ 10 (citing Pltf. Aff. at ¶ 8, Exh. 24 (letter dated 11/17/08 to AHMSI from Pltf.)).] Defendants state this is "[p]artially disputed" because Plaintiff's letter did not disclose the transfer of title, and Defendants emphasize that M.A. Chavez did not obtain lender consent prior to the transfer. [Reply CSOF at ¶ 10.]

Plaintiff argues the notes in Defendants' serving file for the Mortgage show that Defendants were aware that M.A. Chavez and Plaintiff intended to have Plaintiff take over the Loan and Mortgage. [Pltf.'s CSOF at ¶ 4 (citing Pltf. Aff., Exh. 1 (pages 52 and 53 of 462, spreadsheet showing comments regarding the Loan, and letter dated 11/17/08)).[5]] The letter is to AHMSI from Plaintiff, and states, *inter alia*:

-"I Macario A. Chavez c/o Luis Chavez am proposing a loss mitigation option"; [Pltf. Aff., Exh. 1 at PageID #: 1248;] and

-"I the repayor Luis Chavez would like to disclose my father Macario Chavez has given me a Durable Power of Attorney on February 1, 2007[,]" [id.]

---

[5] Defendants dispute this, arguing Plaintiff's Exhibit 1 only shows that loan modification was discussed, not Plaintiff's assumption of the Loan. [Reply CSOF at ¶ 4.]

Plaintiff points out that he entered into the loan modification agreement, dated March 1, 2009, using M.A. Chavez's power of attorney, and that Defendants did not object to this.  Plaintiff also states one of Defendants' agents, Matt Palmer, had personal knowledge that Plaintiff was going to be responsible for the Loan.  Pltf.'s CSOF at ¶ 5; Reply CSOF at ¶ 5 (stating Pltf.'s ¶ 5 is "[p]artially disputed," but only emphasizing the loan modification agreement is in M.A. Chavez's name; no other portion of Pltf.'s ¶ 5 is addressed); see also Pltf. Aff., Exh. 2 (Loan Modification Agreement).

It is undisputed that M.A. Chavez transferred his interest in the Property to Plaintiff through a Quitclaim Deed that was recorded on April 3, 2007.  Defs.' CSOF at ¶ 7; see also Nakashima Decl., Exh. M (Quitclaim Deed).[6]  Defendants state M.A. Chavez "did not obtain consent of the lender pursuant to Paragraph 18 of the [M]ortgage to transfer his interest" in the Property to Plaintiff.  [Defs.' CSOF at ¶ 8 (some citations omitted) (citing Torres Decl. at ¶ 18).]  Plaintiff disputes this and has argued the lender was aware of the transfer of

---

[6] Defendants point out that the version of the Quitclaim Deed in Exhibit M is a certified public record, and therefore self-authenticating, as are all of the other certified public records that they have presented in this case.  [Mem. in Supp. of Motion at 5 n.1.]

interest, but he has not identified any evidence supporting his position.

Defendants state that, "[o]n May 1, 2007, the beneficial interest in the Loan was transferred to Deutsche Bank as Trustee," and M.A. Chavez was not in default at that time. [Id. at ¶ 9 (citing Torres Decl. at ¶ 7).] Plaintiff disputes this but does not cite supporting evidence. He merely states: "No transfer took place." [Pltf.'s CSOF at ¶ 9.]

It is undisputed that the following events took place:

-on August 13, 2008, AHMSI sent M.A. Chavez a written notice of default;

-on November 14, 2008, an assignment of the Mortgage by MERS, as American Home Mortgage Acceptance, Inc.'s ("AHMAI") nominee, to Deutsche Bank was recorded ("2008 Assignment");[7] and

-on March 1, 2009, M.A. Chavez and AHMSI entered into Loan Modification Agreement.

Defs.' CSOF at ¶¶ 10-12; see also Torres Decl., Exh. E (2008 Assignment), Exh. P (8/13/08 default notice letter).

M.A. Chavez died in California on November 30, 2010, and Plaintiff was appointed as the special administrator of M.A.

---

[7] Plaintiff claims that the 2008 Assignment, which was signed by Linda Green for MERS, "does not have any legal force and cannot provide any support for the transfer of the [M]ortgage." [Pltf.'s CSOF at ¶ 8 (citing Pltf. Aff. at ¶ 4).] Defendants dispute this on the ground that it is a legal argument. [Reply CSOF at ¶ 8.]

Chavez's estate ("the Estate") on May 25, 2011. [Defs.' CSOF at ¶¶ 15, 18.]

According to Defendants, "[t]he last regular monthly Loan payment was applied on November 8, 2010." [Id. at ¶ 13 (citing Torres Decl. at ¶ 9).] Plaintiff disputes this, stating that, after April 1, 2009, he made more than $96,000 in payments to Defendants, and Defendants accepted the payments without objection. [Pltf.'s CSOF at ¶ 6 (citing Pltf. Aff. at ¶ 3).[8]] Plaintiff does not specify how much of the $96,000 he paid after he allegedly stopped making monthly payments.

The parties apparently agree that there were insurance claims made for losses to the Property from May 2010 to March 2011, and they agree that the insurance claims were paid. Plaintiff states he made the repairs himself before the claims were paid by the insurance company. When the checks were received, he submitted them as payments on the Loan. The parties agree the two checks were for $2,445.00 and $1,656.84. [Pltf.'s CSOF at ¶¶ 11, 16-17; Reply CSOF at ¶¶ 11, 16-17

_____

[8] Plaintiff also submits a letter, dated June 27, 2011, to M.A. Chavez from AHMSI stating that: $3,500 was received on January 14, 2011 and placed in a suspense account; on January 21, 2011, $4,698.98 was "reversed and reapplied" from a restricted escrow account; and the two combined amounts were applied to the November 2010 and December 2010 Loan payments, which were $4,094.29 each. [Pltf. Aff., Exh. 19.] The Court notes that Exhibit 19 may be an incomplete document because there is no signature line to the letter.

(disputing those statements in part, but only point out the amounts were applied to M.A. Chavez's account).]

Plaintiff asserts that, "[a]s of April 21, 2011, $21,047.28 is the total of the funds which were manipulated to manufacture a default." [Pltf.'s CSOF at ¶ 7 (citing Pltf. Aff. at ¶ 3).] Defendants respond that there is no evidence to support Plaintiff's calculation, and they assert they properly applied or credited any payments on the Loan. [Reply CSOF at ¶ 7 (citing Torres Suppl. Decl. at ¶ 2).] Plaintiff asserts: "The actions of the Defendants to hold funds paid to them in suspense, use of the escrow, restricted escrow and suspense accounts are examples of the manipulation of the Plaintiff's account to manufacture a default." [Pltf.'s CSOF at ¶ 18 (citing Pltf. Aff. at ¶¶ 17-21, Exhs. 18-23).] Defendants dispute this, asserting: "All payments were appropriately applied or credited to the Loan." [Reply CSOF at ¶ 18 (citing Torres Suppl. Decl. at ¶ 2).]

On April 19, 2010, an agent for Deutsche Bank sent M.A. Chavez a letter "giving [him] notice of his default, the amount required to cure the default, and the time by which [he] was required to pay the full amount of the default or face acceleration of the principal and interest." [Defs.' CSOF at ¶ 14 (citing Torres Decl., Exh. Q).] Defendants state a similar letter was sent on February 18, 2011. [Id. at ¶ 16 (citing

10

Torres Decl., Exh. R).]  Defendants also state that: "Since the last partial Loan payment was applied in March 2011, Plaintiff has collected rent and lived on the Property without making mortgage payments." [Id. at ¶ 17 (citing Nakashima Decl., Exh. A (excerpts of trans. of Pltf.'s 6/26/20 depo. ("Pltf. Depo. vol. II")) at 234-35).]  According to Plaintiff, he never received a notice of default and never had the opportunity to cure.  [Pltf.'s CSOF at ¶ 13 (citing Pltf. Aff. at ¶ 12, Exh. 10 (same letters as Defs.' Exhs. Q and R)).]  Defendants dispute this, asserting M.A. Chavez was mailed default notices at the Property.  [Reply CSOF at ¶ 13 (citing Torres Decl., Exhs. P, Q, R).]

It is undisputed that, in 2015, Plaintiff transferred his interest in the Property to his entity, Maui Paipala Place, LLC, through a Warranty Deed.  Defs.' CSOF at ¶ 19; see also Nakashima Decl., Exh. T (Warranty Deed).  In 2016, Plaintiff created a condominium property regime for the Property.  [Defs.' CSOF at ¶ 20.]

On March 13, 2017, an assignment of the Mortgage from MERS, as nominee for American Home Mortgage, and/or its successors and assignees, in favor of Deutsche Bank, was recorded ("2017 Assignment").  [Id. at ¶ 21 (some citations omitted) (citing Torres Decl., Exh. F (2017 Assignment)).]

Plaintiff admits the 2017 Assignment was recorded, but he argues it "was a forgery." [Pltf.'s CSOF at ¶ 21.]

According to Defendants, neither M.A. Chavez, the Estate, nor Plaintiff has cured the defaults or tendered the amount due on the Loan. [Defs.' CSOF at ¶ 23 (citing Torres Decl. at ¶ 11).] Plaintiff disputes this, stating he was never given the opportunity to cure. [Pltf.'s CSOF at ¶ 13.] Defendants also state their records indicate they have never received a qualified written request ("QWR") about the Loan. [Defs.' CSOF at ¶ 22 (citing Torres Decl. at ¶ 20).] Plaintiff disputes this, stating there were at least six dispute letters sent through September 2020. [Pltf.'s CSOF at ¶ 22.] Plaintiff states he made at least four attempts to resolve issues that have arisen with the Mortgage. [Id. at ¶ 15 (citing Pltf. Aff. at ¶ 14, Exh. 12 (various correspondence and Loan documents from Defendants or its predecessors and the Estate)).]

Plaintiff also states he accurately reported the rental agreements and tenants' identities. [Id. at ¶ 14 (citing Pltf. Aff. at ¶ 13, Exh. 11 (Residential Lease dated 1/1/00 between M.A. Chavez and Plaintiff, and Residential Lease dated 11/9/11 between the Estate and Leilani Fagner and Shadrach Hanohano)).] Defendants dispute this stating:

-the rental agreements between M.A. Chavez as landlord and
    Plaintiff as tenant were fictitious because Plaintiff had
    title to the Property at that time; [Reply CSOF at ¶ 14

12

(citing Torres Decl., Exh. K; Nakashima Decl., Exhs. L, M);] and

-in 2012, Plaintiff claimed to have $64,800 in annual rental income from the Property, but the Estate only reported $42,000 on its tax return, [id. (citing Chavez Aff., Exh. 14 at DBNTC001575; Nakashima Decl., Exh. W)].

Of the claims in the Third Amended Complaint, five are brought by Plaintiff on behalf of the Estate ("Plaintiff as Administrator"): Count III (breach of contract); Count IV (promissory estoppel); Count V (conversion); Count VII (quiet title); and Count XI (RESPA).  The remaining six claims are brought by Plaintiff in his individual capacity ("Plaintiff Individually"): Count I (UDAP); Count II (FDCPA); Count VI (intentional interference); Count VIII (fraud); Count IX (IIED); and Count X (NIED).  In the instant Motion, Defendants argue they are entitled to judgment as a matter of law - either dismissal with prejudice or summary judgment - as to all of Plaintiff's claims.[9]

## DISCUSSION

### I.   Challenges to the Assignments

At the outset, the Court rejects Plaintiff's assertion that Defendants do not have a valid interest in either the Mortgage or the Property because the 2008 Assignment and 2017 Assignment are invalid.  See Third Amended Complaint at ¶¶ 24-

---

[9] In light of the procedural posture of this case, only Defendants' request for summary judgment has been considered.

30.  Plaintiff alleges the 2008 Assignment constitutes a forgery because it bears the signature of a fictitious "robo-signer," Linda Green.  [Id. at ¶ 25.]  He alleges the 2017 Assignment is invalid because: MERS did not have authority to enter into the 2017 Assignment on behalf of American Home Mortgage; the Mortgage itself contains forged signatures; the 2017 Assignment contains false information about the Mortgage; and AHMAI ceased operations approximately nine months before the assignment. [Id. at ¶¶ 26-27.]

> The Ninth Circuit has stated:
>
> Generally, "third parties do not have enforceable contract rights" unless they are intended third party beneficiaries.  Velasco v. Sec. Nat'l Mortg. Co., 823 F. Supp. 2d 1061, 1067 (D. Haw. 2011) (quoting Ass'n of Apartment Owners of Newtown Meadows v. Venture 15, Inc., 115 Hawai`i 232, 167 P.3d 225, 262 (2007)), aff'd, 508 Fed. Appx. 679 (9th Cir. 2013).  As such, "borrowers generally lack standing to challenge the assignments of their loans."  Paik-Apau v. Deutsche Bank Nat. Tr. Co., No. CIV. 10-00699 SOM, 2012 WL 5207495, at *4 (D. Haw. Oct. 19, 2012).  An exception applies when a challenge would make an assignment void, not voidable. Id.; U.S. Bank Nat'l Ass'n v. Salvacion, 134 Hawai`i 170, 338 P.3d 1185, 1190 (Ct. App. 2014).

Dicion v. Mann Mortg., LLC, 718 F. App'x 476, 478 (9th Cir. 2017).  In Paik-Apau, this district court identified some examples of loan assignments that are void ab initio and can be challenged by the borrower:

> "A contract that is void never attains legal effect as a contract and cannot be enforced,

whereas a contract that is voidable is one where one or more of the parties have the power, by the manifestation of an election to do so, to avoid the legal relations created by the contract." 17A Corpus Juris Secundum § 169, *available at* Westlaw CJS Contracts § 169 (updated Sept. 2012). A contract is void when one of its essential elements is missing or when it is made in violation of law.  A party cannot consent to an agreement that violates the law.  See id. Accordingly, Hawaii courts have held that a foreclosure sale agreement that arose out of a foreclosure sale that was contrary to statute is void and unenforceable.  See Lee v. HSBC Bank USA, 121 Haw. 287, 292, 218 P.3d 775, 780 (2009).[10]  Hawaii courts have similarly held that a contract that involves an "unfair or deceptive practice" in violation of chapter 480 of Hawaii Revised Statutes is void and unenforceable.  See 808 Dev., LLC v. Murakami, 111 Haw. 349, 357, 141 P.3d 996, 1004 (2006).  A judge of this court has held that a company in bankruptcy liquidation could not validly assign its interest in a note and mortgage to another company that would thereafter seek to foreclose on property as a result of the assignment.  See Deutsche Bank Nat'l. Trust Company, as Trustee Morgan Stanley ABS Capital I Inc. Trust 2007-NC-1 Mortgage Pass-Through Certs., Series 2007-NC1 v. Williams, 2012 WL 1081174, *3 (D. Haw. Mar. 29, 2012) (Seabright, J.).

2012 WL 5207495, at *5.

Defendants have presented recorded copies of the

Mortgage, 2008 Assignment, and 2017 Assignment, as well as the

---

[10] The Hawai`i Intermediate Court of Appeals has stated that Lee and other similar cases have been impliedly overruled, and "improper foreclosure sales are voidable, rather than void[.]" Delapinia v. Nationstar Mortg. LLC, 146 Hawai`i 218, 229, 458 P.3d 929, 940 (Ct. App. 2020), *cert. granted*, No. SCWC-17-0000387, 2020 WL 2992104 (Hawai`i June 4, 2020).  However, this distinction does not affect Plaintiff's claim in this case.

declaration of Sally Torres.  Defendants have therefore carried
their initial burden of production and persuasion on summary
judgment as to their interest in the Loan and the Property.  See
Friedman v. Live Nation Merch., Inc., 833 F.3d 1180, 1188 (9th
Cir. 2016) ("a moving party without the ultimate burden of
persuasion at trial . . . nonetheless has both the initial
burden of production and the ultimate burden of persuasion on a
motion for summary judgment" (brackets, citation, and internal
quotation marks omitted)).  Thus, the burden shifts to
Plaintiff, who must "establish, beyond the pleadings, that there
is a genuine issue for trial." Miller v. Glenn Miller Prods.,
Inc., 454 F.3d 975, 987 (9th Cir. 2006) (citing Celotex Corp. v.
Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265
(1986)).

Plaintiff, however, identifies no evidence raising a
genuine issue of fact for trial as to whether the Mortgage or
the Assignments are void.  Plaintiff has apparently abandoned
his assertion that the Mortgage itself is invalid because it
contains forged signatures, and his position now is that he is
liable for the debt secured by the Mortgage.  Cf. Pltf. Aff. at
¶ 2 ("I am the borrower on the mortgage with the Defendants
which is the subject of this lawsuit.  I have accepted and
assumed the liability for the mortgage and the note . . . .").
At most, Plaintiff presents his own, self-serving affidavit

16

regarding the validity of the Assignments.  See, e.g., id. at

¶ 4 (stating Plaintiff seeks relief from the effects of "the

admitted void, invalid, forged assignment of mortgage by 'Linda

Green' for MERS as nominee for American Home Mortgage

Acceptance, Inc. who was the incorrect party").  While this

Court cannot disregard Plaintiff's statements "solely based on

[their] self-serving nature," it can disregard Plaintiff's

statements here because the Plaintiff Affidavit "states only

conclusions and not facts that would be admissible evidence."

See Nigro v. Sears, Roebuck & Co., 784 F.3d 495, 497 (9th Cir.

2015) (citations omitted).  Because Plaintiff's self-serving

statements regarding alleged defects in the Assignments are

disregarded, Plaintiff has failed to present any evidence

raising a genuine issue of fact for trial regarding the question

of whether the assignments are void.  This Court therefore

rules, as a matter of law, that Plaintiff lacks standing to

challenge the Assignments.  See Fed. R. Civ. P. 56(a) ("The

court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law.").  For

purposes of the instant case, this Court will assume that the

Assignments are valid.  Further, because Plaintiff's argument

that Deutsche Bank did not have a valid interest in the Property

is based on his argument that the Assignments are defective,

this Court will also assume that Deutsche Bank had a valid
interest in the Property at all times relevant to this case.

## II.   **Claims by Plaintiff as Administrator**

### A.   **Breach of Contract**

Count III alleges Defendants breached the Loan
contract by: accelerating the contract without providing
Plaintiff with proper notice; failing to apply excess funds in
the Mortgage account; and refusing to accept payments from
Plaintiff that would have cured the default.  [Third Amended
Complaint at ¶ 106.]  In the instant Motion, Defendants argue
they are entitled to summary judgment on Count III because the
breaches of the Loan contract by M.A. Chavez and/or his Estate
preclude Plaintiff as Administrator from recovering on a breach
of contract claim.

The Hawai`i Supreme Court has stated:

> "a party who breaches or causes the other party
> to breach an agreement cannot enforce the
> agreement to his or her benefit."  Stanford Carr
> Dev. Corp. v. Unity House, Inc., 111 Hawai`i 286,
> 300, 141 P.3d 459, 473 (2006); see also PR
> Pension Fund [v. Nakada], 8 Haw. App. [480,] 491,
> 809 P.2d [1139,] 1146 [(1991)] (noting "a party
> cannot recover for a breach of contract if he
> fails to comply with the contract himself"
> (citation omitted)); cf. Kahili, Inc. v.
> Yamamoto, 54 Haw. 267, 272, 506 P.2d 9, 12 (1973)
> ("The general rule is that where a person by his
> own act makes impossible the performance or the
> happening of a condition such nonperformance
> should not relieve him from his obligation under
> a contract."); Kalinowski [v. Yeh], 9 Haw. App.
> [473,] 478–79, 847 P.2d [673,] 677 [(1993)]

> ("[N]o person can defend against contractual
> liability on grounds of a condition precedent
> when he [or she] is responsible for that
> condition precedent not being complied with."
> (second alteration in original) (citation
> omitted)).  In other words, if a party is
> responsible for another party's lack of
> performance, he or she cannot successfully assert
> a breach of contract claim for damages.

Furuya v. Ass'n of Apartment Owners of Pac. Monarch, Inc., 137

Hawai`i 371, 385-86, 375 P.3d 150, 164-65 (2016) (some

alterations in Furuya).

Defendants argue M.A. Chavez and the Estate committed

various breaches of the Loan contract.  As to Defendants'

allegations that M.A. Chavez's failure to use the Property as

his primary residence constituted a breach, viewing the evidence

in the light most favorable to Plaintiff,[11] there is a genuine

issue of material fact as to the issue of whether the Property

was his primary residence.  See, e.g., Nakashima Decl., Exh. A

(Pltf. Depo. vol. II) at 186-88 (Plaintiff's testimony that his

parents went back and forth between Hawai`i and California).

Therefore, Defendants are not entitled to a ruling that, as a

matter of law, M.A. Chavez breached the Loan contract by failing

to use the Property as his primary residence.

---

[11] When a district court rules on a motion for summary
judgment, the record must be viewed in the light most favorable
to the nonmoving party.  Crowley v. Bannister, 734 F.3d 967, 976
(9th Cir. 2013).

Defendants also contend the transfers of the Property without prior consent breached the Loan contract.  The Mortgage states:

> 18.  **Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.  If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without **Lender's prior written consent**, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

[Torres Decl., Exh. I at PageID #: 1088 (second emphasis added).]

It is undisputed that M.A. Chavez transferred the Property to Plaintiff in 2007 and that Plaintiff transferred the Property to his entity in 2015.  [Nakashima Decl., Exh. M (2007 Quitclaim Deed), Exh. T (2015 Warranty Deed).]  Plaintiff has

presented some testimony and evidence, which he argues shows that Defendants were aware of M.A. Chavez's intent to have Plaintiff take over the Loan, and that Defendants never objected to his assumption of the Loan.  See Pltf. CSOF at ¶¶ 2-4 (citing Pltf. Aff. at ¶¶ 1-2, Exh. 1).  However, this does not address whether Defendants contented, in writing, prior to the transfer from M.A. Chavez to Plaintiff.  Moreover, Plaintiff has not identified any evidence suggesting that Defendants gave any form of consent to the transfer from Plaintiff to his entity. Although there is no dispute that prior written consent to transfer was lacking, the Mortgage merely provides that, if a transfer is made without prior written consent, the lender **may choose** to accelerate the loan, after providing the required notice.  Defendants, however, apparently did not provide notice that that the Loan was being accelerated because of the failure to obtain prior written consent to the transfer of the Property. See Torres Decl., Exh. P (8/13/08 default notice letter stating: "The Promissory Note and/or Security Instrument, including all Riders thereto, are presently in default **due to the non-payment** of the 07/01/2008 and the subsequent payments." (emphasis added)), Exh. Q (4/19/10 default notice letter stating: "you are in default under the terms and conditions of the Note and Security Instrument . . . for **failure to pay** the required installments when due" (emphasis added)), Exh. R (2/18/11 letter

21

with the same statement as the 4/19/10 letter).  Viewing the record in the light most favorable to Plaintiff, there are genuine issues of material fact relevant to the issue of whether the failure to obtain prior written consent to the transfers of the Property constituted breaches of the Loan contract.

Defendants also assert M.A. Chavez and the Estate breached the Loan contract by failing to make the required payments.  The April 19, 2010 default notice letter states:

> As of **04/17/2010 the amount of the debt that we are seeking to collect is $10,116.16,** which includes the sum of payments that have come due on and after the date of default **03/01/2010,** any late charges, periodic adjustment to the payment amount (if applicable) and expenses of collection.  In addition, any advances made by the Servicer to protect their lien position must be added to the total amount necessary to cure the default.

[Torres Decl., Exh. Q (emphases in original).]  The letter stated M.A. Chavez had a right to cure the default, but the right to cure did not suspend his obligation to pay his monthly mortgage installments.[12]  [Id.]  The February 18, 2011 default notice letter contained the same statements, except that the amount of debt sought to be collected was $11,259.51, and the

---

[12] As of the May 2010 payment, the amount due monthly was $4,091.46.  [Pltf. Aff., Exh. 19 (6/27/11 letter to M.A. Chavez from AHMSI).]  The monthly payment was $4,001.97 as of the May 2011 payment.  [Id.]

date of the default was January 1, 2011. [Torres Decl., Exh. R.]

Viewing the record in the light most favorable to Plaintiff, the last monthly Mortgage payment was March 2011. See Pltf. Aff. at ¶ 10 (stating Plaintiff "made every payment from the execution of the loan in 2007 to March 2011"). As of March 19, 2011, M.A. Chavez's escrow account had a surplus of $3,761.92, and AHMSI stated a check would be mailed to him within thirty days. [Id., Exh. 21 (Annual Escrow Account Disclosure Statement).] In April 2011, Plaintiff sent $4,400 to AHMSI through Western Union, but AHMSI returned the funds because the amount was insufficient to cure the default. [Id., Exh. 23 (letter dated 4/26/11 to M.A. Chavez from an unnamed AHMSI "Home Retention Team Representative").] As of May 28, 2011, $2,445.00 from a restricted escrow account was applied to a suspense account.[13] [Id., Exh. 19.] Plaintiff also sent a $1,656.84 insurance check. [Pltf.'s CSOF at ¶¶ 11, 16-17; Reply CSOF at ¶¶ 11, 16-17.]

Accepting Plaintiff's position that all of these amounts should have been credited to M.A. Chavez's Loan account, the $12,263.76 total would only have been enough to satisfy the

---

[13] The $2,445.00 amount appears to be a cashier's check that was part of the proceeds Plaintiff received for insurance claims that were paid. See Pltf. Aff. at ¶ 15; Pltf.'s CSOF at ¶¶ 11, 16-17; Reply CSOF at ¶¶ 11, 16-17.

default amount stated in the February 18, 2011 notice letter.
The remainder would not have paid even one of the approximately
$4,000 monthly Mortgage payments.  Plaintiff asserts he never
received notice that M.A. Chavez's Loan was in default, but his
position is belied by the record.  The April 19, 2010 default
notice letter and the February 18, 2011 default notice letter
were sent to M.A. Chavez, at the Property, by certified mail.
See Torres Decl., Exhs. Q, R.

> Th[e] common law mailbox rule "provides that the
> proper and timely **mailing** of a document raises a
> rebuttable presumption that the document has been
> received by the addressee in the usual time.  It
> is a settled feature of the federal common law."
> Schikore v. BankAmerica Supplemental Ret. Plan,
> 269 F.3d 956, 961 (9th Cir. 2001) (emphasis
> added).  Simply put, "if a letter properly
> directed is proved to have been either put into
> the post-office or delivered to the postman," the
> rebuttable presumption of receipt is triggered—
> neither a signature nor even a record of delivery
> is required.  Lupyan v. Corinthian Colleges Inc.,
> 761 F.3d 314, 319 (3d Cir. 2014); accord Kerr v.
> Charles F. Vatterott & Co., 184 F.3d 938, 947
> (8th Cir. 1999).  The rule is "a tool for
> determining, in the face of inconclusive
> evidence, whether or not receipt has actually
> been accomplished."  Schikore, 269 F.3d at 961.
> **"A 'strong presumption' of receipt applies when
> notice is sent by certified mail, because it
> creates actual evidence of delivery [to the
> postman] in the form of a receipt."**  Lupyan, 761
> F.3d at 319; cf. id. ("A 'weaker presumption'
> arises where delivery is sent via regular mail,
> for which no receipt, or other proof of delivery,
> is generated.").

Chevron Env't Mgmt. Co. v. Env't. Prot. Corp., 335 F.R.D. 316,
325 (E.D. Cal. 2020) (second emphasis added) (footnote omitted).

24

The April 19, 2010 letter was returned to the sender as "UNCLAIMED UNABLE TO FORWARD," and the February 18, 2011 letter was returned, marked "NOT DELIVERABLE AS ADDRESSED UNABLE TO FORWARD."  [Torres Decl., Exhs. Q, R.]  However, both letters were addressed to the Property, where it is undisputed that Plaintiff has lived at all times relevant to this case.  See Nakashima Decl., Exh. A (Pltf. Depo. vol. II) at 234.]  During that period, Plaintiff was acting on M.A. Chavez's behalf, pursuant to a power of attorney.  See, e.g., Pltf. Aff., Exh. 1 at PageID #: 1248.  Even viewing the record in the light most favorable to Plaintiff, he ignored or refused to accept the default notice letters.  This is insufficient to rebut the strong presumption that Plaintiff, acting on M.A. Chavez's behalf, received the default notice letters.  Plaintiff's own evidence shows that he was aware of problems with M.A. Chavez's Loan account.  The June 27, 2011 letter from AHMSI to M.A. Chavez was written in response correspondence received by AHMSI that raised concerns on M.A. Chavez's behalf.  [Pltf. Aff., Exh. 19 ("I would like to thank you for giving me the opportunity to address your concerns."); Id. ("I regret to advise you that we are unable to remove the derogatory credit reporting, which accurately reflects the payment history of the loan.").]  By this time, M.A. Chavez was deceased, and the only reasonable inference is that that Plaintiff sent the

correspondence.  Thus, Plaintiff must be charged with knowledge that M.A. Chavez's Loan account was in default.

Even if the default reflected in the February 18, 2011 notice letter is not considered, the $12,263.76 would only have paid three installments of the monthly Mortgage payments.  Thus, by July 2011, the monthly Mortgage payment would not have been paid.

Under either scenario, by some time in 2011, the Estate breached the Loan contract by failing to make the required payments.  Plaintiff himself states he has "paid the taxes and insurance [for the Property] since February 2012," [Pltf. Aff. at ¶ 14,] *i.e.*, he has not made the Mortgage payments.  Thus, there are no genuine issues of material fact as to Count III, and this Court concludes, as a matter of law, that the Estate's breach of the Loan contract precludes Plaintiff as Administrator from pursuing a breach of contract claim against Defendants.  See Furuya, 137 Hawai`i at 385-86, 375 P.3d at 164-65.  Defendants are entitled to summary judgment as to Count III.

### B.  Promissory Estoppel

Count IV alleges Plaintiff as Administrator relied to his detriment on Defendants' promises to resolve the encumbrances on the Property.  [Third Amended Complaint at ¶¶ 109-14.]  Promissory estoppel is an equitable claim.  See

<u>Gonsalves v. Nissan Motor Corp. in Haw., Ltd.</u>, 100 Hawai`i 149, 164, 58 P.3d 1196, 1211 (2002).  Hawai`i courts

> observe[s] the principle, long-invoked in the federal courts, that "equity has always acted only when legal remedies were inadequate." <u>Beacon Theatres, Inc. v. Westover</u>, 359 U.S. 500, 509, 79 S. Ct. 948, 956, 3 L. Ed. 2d 988 (1959) (footnote omitted).  This court has observed that "[t]he necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies is . . . the absence of an adequate remedy at law."  <u>Bd. of Dirs. of the Ass'n of Apt. Owners of Regency Tower Condo. Project v. Regency Tower Venture (Regency Tower Venture)</u>, 2 Haw. App. 506, 513, 635 P.2d 244, 249 (1981).

<u>Porter v. Hu</u>, 116 Hawai`i 42, 55, 169 P.3d 994, 1007 (Ct. App. 2007) (some alterations in <u>Porter</u>).  This district court has stated that,

> "[w]here the parties to a contract have bargained for a particular set of rights and obligations, all claims involving those express rights and obligations properly lie in contract law and not in equity."  <u>AAA Haw., LLC v. Haw. Ins. Consultants, Ltd.</u>, CV No. 08-00299 DAE-BMK, 2008 WL 4907976, at *3 (D. Haw. Nov. 12, 2008). . . . Thus, equitable remedies like promissory estoppel and unjust enrichment "are not available when an express contract exists between the parties concerning the same subject matter."  <u>Sung v. Hamilton</u>, 710 F. Supp. 2d 1036, 1064 (D. Haw. 2010) (citations omitted).

<u>Taylor v. Bartolucci</u>, CIVIL NO. 19-00494 JAO-KJM, 2020 WL 929852, at *8 (D. Hawai`i Feb. 26, 2020) (alteration in <u>Taylor</u>).  However, Hawai`i courts will allow a plaintiff to pursue equitable remedies in spite of the existence of an express

contract between the parties where the contract does not address the defendant's alleged conduct.  See Porter, 116 Hawai`i at 55-56, 169 P.3d at 1007-08 ("Defendants fail to show that the contract actually addressed a situation like this — where Defendants are alleged to have wrongfully subverted the contractual relationship to deprive Plaintiffs of their books of business.").

Count IV alleges Defendants wrongfully accelerated the Mortgage and then promised Plaintiff that the situation would be rectified, but they failed to do so.  Plaintiff's claim addresses the proper crediting of payments by the borrower and the lender's proper exercise of remedies when there is a default.  These are matters that are squarely within the terms of the Loan contract.  See generally Torres Decl., Exh. I (Mortgage).  Because there is an express contract concerning the same matters at issue in the promissory estoppel claim, the promissory estoppel claim fails as a matter of law.  Defendants' are therefore entitled to summary judgment as to Count IV.

C.   **Conversion**

Count V alleges the conversion of $16,313.68 in surplus funds that were paid toward M.A. Chavez's Loan account. [Third Amended Complaint at ¶¶ 115-19.]  This Court has previously stated:

28

> Hawaii defines conversion as "[a]ny distinct act
> of dominion wrongfully exerted over one's
> property in denial of his right or inconsistent
> with it." Tsuru v. Bayer, 25 Haw. 693, 696 (Haw.
> Terr. 1920) (internal citation and quotation
> omitted).  The elements of a conversion claim
> are: "'(1) [a] taking from the owner without his
> consent; (2) an unwarranted assumption of
> ownership; (3) an illegal use or abuse of the
> chattel; and (4) a wrongful detention after
> demand.'" Pourny v. Maui Police Dep't, 127 F.
> Supp. 2d 1129, 1146 (D. Haw. 2000) (Kay, J.)
> (quoting Tsuru, 2[5] Haw. at 696).

5/31/19 Order, 2019 WL 2330885, at *7 (alterations in 5/31/19

Order) (citation omitted).  This district court has recognized

that a plaintiff can bring a conversion claim where he alleges

the defendant "wrongfully retained deposits, assumed ownership

of the funds, and refus[ed] to return the deposits after demand

was made[.]" Jass v. CherryRoad Techs., Inc., Case No. 19-cv-

00609-DKW-RT, 2020 WL 3965969, at *7 (D. Hawai`i July 13, 2020)

(some alterations in Jass) (citation and internal quotation

marks omitted).

Defendants have presented evidence that the "last

regular monthly payment" was applied to the Loan on November 8,

2010, and the last credit was applied on March 28, 2011.

[Torres Decl. at ¶¶ 9-10.]  Plaintiff himself admits that no

Mortgage payment has been made since April 2011.  [Nakashima

Decl., Exh. A (Pltf. Depo. vol. II) at 234.]  Defendants have

therefore carried their burden of production and persuasion and

have shown that there was no improper assertion of ownership or

improper use of excess funds paid toward the Loan.  See also Torres Reply Decl. at ¶ 2 ("According to the Loan records, all payments were appropriately applied or credited to the Loan."). The burden therefore shifts to Plaintiff to show that there is a genuine issue of fact for trial as to his conversion claim.

Even assuming that Plaintiff raised a triable issue as to whether Defendants properly applied the alleged surplus payments to the Loan, he has failed to raise a triable issue as to the requisite intent.  One Hawai`i Supreme Court case has stated "a constructive or actual intent to injure" the plaintiff's property interest is required to establish conversion.  Brooks v. Dana Nance & Co., 113 Hawai`i 406, 415, 153 P.3d 1091, 1100 (2007).  However, the Hawai`i Intermediate Court of Appeals has stated otherwise.  See, e.g., Yoneji v. Yoneji, 136 Hawai`i 11, 16–17, 354 P.3d 1160, 1165–66 (Ct. App. 2015) (stating all that is required is that the defendant "intended to deal with the property in a way which is in fact inconsistent with the property rights of another" (brackets, citation, and internal quotation marks omitted)).  "Courts in this district have split on which line of cases to follow." JN Grp. Holdings, Inc. v. Ryan, Civ. No. 17-00375 ACK-KJM, 2018 WL 485937, at *7 (D. Hawai`i Jan. 19, 2018) (citing Newcomb v. Cambridge Home Loans, Inc., 861 F. Supp. 2d 1153, 1164 (D. Haw. 2012) (citing Brooks); Sunday's Child, LLC v. AZREP BW LLC, Civ.

No. 13-00502 DKW-RLP, 2017 WL 561338 at *5 (D. Hawai`i Feb. 10, 2017) (citing Yoneji)).  This Court need not decide which line of cases to follow because the conversion claim in this case fails under either analysis.

If an actual or constructive intent to injure the Estate or Plaintiff as Administrator is required, Plaintiff has failed to identify any evidence which raises a genuine issue of fact as to the existence of such an intent.  Even if all that is required is an intent to deal with the funds in a manner that was inconsistent with the rights of the Estate, Plaintiff has still failed to identify sufficient evidence to create a triable issue of fact.  The Mortgage specifically directs the manner in which payments received are to be applied to the Loan account.

> **2.  Application of Payments or Proceeds.**
> Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.
>
> If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the

31

> repayment of the Periodic Payments if, and to the
> extent that, each payment can be paid in full.
> To the extent that any excess exists after the
> payment is applied to the full payment of one or
> more Periodic Payments, such excess may be
> applied to any late charges due.  Voluntary
> prepayments shall be applied first to any
> prepayment charges and then as described in the
> Note.

[Torres Decl., Exh. I at 4 (emphasis in original).]  Section 1

of the Mortgage allows the Lender, at its discretion, to accept

or return a partial payment that is insufficient to bring the

account current.  [Id.]  Further, the lender is not required to

apply such funds as soon as they are accepted, and it "may hold

such unapplied funds until Borrower makes payment to bring the

Loan current.  If Borrower does not do so within a reasonable

period of time, Lender shall either apply such funds or return

them to Borrower."  [Id.]

Even construing the evidence in the light most

favorable to Plaintiff, the alleged surplus funds were applied

to various charges related to the Mortgage, consistent with the

provisions above.  See, e.g., Pltf. Aff., Exh. 18 (5/17/10

letter from AHMSI discussing the suspense account and when some

monies from the account was applied), Exh. 19 (6/27/11 letter

from AHMSI discussing application of funds from the restricted

escrow account and the suspense account).  Plaintiff has

therefore failed to raise genuine issue of fact as to the

question of whether Defendants acted with an intent to deal with

32

the alleged surplus payments in a manner that was inconsistent with the property rights of the Estate.  Under either theory of the intent required for a conversion claim, Plaintiff as Administrator has failed to show that there is a genuine issue of fact for trial.  Because Count V fails as a matter of law, Defendants are entitled to summary judgment as to that claim.

### D. __Quiet Title__

Plaintiff as Administrator seeks to quiet title because "Defendants have fraudulently and without proper authority encumbered the Property."  [Third Amended Complaint at pg. 27.]  The Hawai`i Supreme Court has stated:

> In an action to quiet title, the burden is on the plaintiff to prove title in and to the land in dispute, and, absent such proof, it is unnecessary for the defendant to make any showing.  State v. Zimring, 58 Haw. 106, 110, 566 P.2d 725, 729 (1977) (citations omitted).  The plaintiff has the burden to prove either that he has paper title to the property or that he holds title by adverse possession.  Hustace v. Jones, 2 Haw. App. 234, 629 P.2d 1151 (1981); see also Harrison v. Davis, 22 Haw. 51, 54 (1914).  While it is not necessary for the plaintiff to have perfect title to establish a prima facie case, he must at least prove that he has **a substantial interest in the property and that his title is superior to that of the defendants**.  Shilts v. Young, 643 P.2d 686, 689 (Alaska 1981). . . .

Maui Land & Pineapple Co. v. Infiesto, 76 Hawai`i 402, 407-08, 879 P.2d 507, 512-13 (1994) (emphasis added).  The Estate has no ownership interest in the Property because M.A. Chavez conveyed the Property to Plaintiff in 2007.  See Nakashima Decl., Exh. M

33

(Quitclaim Deed).  The quiet title claim brought by Plaintiff as Administrator therefore fails as a matter of law, and summary judgment is granted in favor of Defendants as to Count VII.

### E.   RESPA

In Count XI, Plaintiff as Administrator alleges he or his then-attorney sent AHMSI and/or Ocwen "at least four" letters that constitute QWRs, pursuant to 12 U.S.C. § 2605(e)(1)(B), but they failed to either take action within sixty days or provide a written response within twenty days. [Third Amended Complaint at ¶¶ 153-54.]  Plaintiff also alleges AHMSI and/or Ocwen have violated § 2605(g) and (k) by wrongfully withholding his money.  [Id. at ¶ 157.]  Further, he asserts AHMSI and/or Ocwen wrongfully imposed unwarranted charges and fees and misapplied payments, as reflected in Ocwen's Affidavit of Debt, which was filed in a state court foreclosure action on June 23, 2017.  [Id. at ¶ 155.]

### 1.   QWRs

Defendants have submitted evidence that neither M.A. Chavez nor anyone acting on his behalf submitted a QWR regarding his Loan.  See Torres Decl. at ¶ 20 (stating she is unaware of any QWR regarding the Loan), ¶ 21 (stating that, based on her experience, knowledge of industry-wide standards, and her own review of the account records, the records are

accurate).  Thus, Defendants have carried their burden of
production and persuasion as to this portion of Count XI.

Plaintiff's position that he submitted four QWRs is
purportedly evidenced by the contents of his Exhibit 12.  See
Pltf. Aff. at ¶ 14.  Exhibit 12 is a collection of documents,
including:

-a letter, dated May 15, 2012, to the Estate from AHMSI in
    response to "a request to consider an assumption of"
    M.A. Chavez's Loan;[14] [Pltf. Aff., Exh. 12 at PageID
    #: 1318;]

-a letter, dated August 27, 2013, titled "HAMP Appeal Review
    Completed" to the Estate, from Hermarie Beard, an Ocwen
    Making Home Affordable Escalations Agent, in response to a
    "request for a second check of [the] application regarding
    modification assistance under the Home Affordable
    Modification Program (HAMP)"; [id. at PageID #: 1321 & 1329
    (what appears to be a second copy of the same letter);]

-a letter, dated October 23, 2012, to the Estate, from the
    Homeward Residential Payment Administration, returning a
    $250.00 payment; [id. at PageID #: 1323;]

-a letter, dated August 12, 2015, from Plaintiff as
    Administrator to Ocwen, stating that he "inten[ds to]
    acquir[e] a partial release pursuant to your July 14, 2015
    response letter," [id. at PageID #: 1328].

Section 2605(e)(1)(B) states:

        For purposes of this subsection, a qualified
        written request shall be a written
        correspondence, other than notice on a payment

---

[14] Exhibit 12 also includes various documents that appear to
be associated with Plaintiff's application to assume M.A.
Chavez's Loan.  [Pltf. Aff., Exh. 12 at PageID #: 1320, 1322,
1325-27, 1330-31.]  These documents are not relevant to the
issue of whether a QWR was submitted regarding the Loan.

coupon or other payment medium supplied by the servicer, that--

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

The one letter from Plaintiff as Administrator in Exhibit 12 does not meet the requirements of § 2605(e)(1)(B)(ii), and therefore it does not constitute a QWR. The other letters in Exhibit 12 which are addressed to the Estate show that someone, acting on the Estate's behalf, sent an inquiry about the Loan, but the letters to the Estate do not contain enough information about the original inquiries to show that any of them constituted a QWR. Because Plaintiff as Administrator has failed to present any evidence indicating that he sent a QWR regarding the Loan, the portion of Count XI alleging a failure to act upon or respond to a QWR fails as a matter of law. Defendants are entitled to summary judgment as to this portion of Count XI.[15]

## 2. **Violations of § 2605(g) and (k)**

12 U.S.C. § 2605(g) states, in pertinent part:

---

[15] In light of this ruling, it is not necessary to address the statute of limitations issue.

> If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due.

Plaintiff as Administrator failed to identify any evidence supporting his allegation that AHMSI and/or Ocwen violated § 2605(g), and therefore this portion of Count XI fails as a matter of law.

Section 2605(k)(1) states:

> A servicer of a federally related mortgage shall not--
>
> > (A)   obtain force-placed hazard insurance[16] unless there is a reasonable basis to believe the borrower has failed to comply with the loan contract's requirements to maintain property insurance;
> >
> > (B)   charge fees for responding to valid qualified written requests (as defined in regulations which the Bureau of Consumer Financial Protection shall prescribe) under this section;
> >
> > (C)   fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off

---

16   "[T]he term 'force-placed insurance' means hazard insurance coverage obtained by a servicer of a federally related mortgage when the borrower has failed to maintain or renew hazard insurance on such property as required of the borrower under the terms of the mortgage."   § 2605(k)(2).

> the loan, or avoiding foreclosure, or other
> standard servicer's duties;
>
> (D) fail to respond within 10 business
> days to a request from a borrower to provide
> the identity, address, and other relevant
> contact information about the owner or
> assignee of the loan; or
>
> (E) fail to comply with any other
> obligation found by the Bureau of Consumer
> Financial Protection, by regulation, to be
> appropriate to carry out the consumer
> protection purposes of this chapter.

Plaintiff as Administrator has failed to present any evidence of a violation of subsections (A), (B), (D), or (E). Because this case generally asserts Defendants misapplied various payments made toward the Loan, this portion of Count XI appears to rely on subsection (C). However, Plaintiff as Administrator failed to present evidence of when he specifically requested that AHMSI and/or Ocwen correct errors regarding allocation of payments. There is evidence that inquiries were made and responded to. See, e.g., Pltf. Aff., Exh. 18 (5/17/10 letter to M.A. Chavez from AHMSI regarding correspondence to AHMSI), Exh. 19 (similar letter dated 6/27/11). Without evidence of when the initiating correspondence was sent, Plaintiff as Administrator has failed to show a lack of timely response by AHMSI. He therefore cannot establish a violation of § 2605(k)(1)(C), and the portion of Count XI alleging a violation of § 2605(k) fails as a matter of law.

### 3.   **Affidavit of Debt**

The final allegation of Count XI is that the Affidavit of Debt which Ocwen filed in a state court foreclosure action on June 23, 2017 showed multiple RESPA violations.  Plaintiff, however, failed to include the Affidavit of Debt with his exhibits in opposition to the Motion.  Plaintiff therefore cannot establish this portion of his RESPA claim.

Because all portions of the RESPA claim brought by Plaintiff as Administrator fail as a matter of law, summary judgment is granted in favor of Defendants as to Count XI.

## III. **Claims by Plaintiff Individually**

### A.   **UDAP**

The allegations that form the basis of Plaintiff's claims are set forth in paragraphs 21, 22, 24, 25, 33-37(f), 47, 48, 50, 51, 53, and 65-68.  Defendants allege Count I, the UDAP claim by Plaintiff Individually, is time-barred as to the majority of the allegations, and the remainder of the allegations do not constitute UDAP violations.  The four-year statute of limitations period in Haw. Rev. Stat. § 480-24 applies to UDAP claims, and the discovery rule does not apply. See 5/31/19 Order, 2019 WL 2330885, at *9.  A UDAP claim accrues when the violation occurs, unless there is a continuing

violation or another reason supporting the tolling of the statute of limitations.  Lowther v. U.S. Bank N.A., 971 F. Supp. 2d 989, 1008–09 (D. Hawai`i 2013), aff'd, 702 F. App'x 517 (9th Cir. 2017).

In determining whether the continuing violation doctrine applies,

> "[t]he key is whether the conduct complaint of constitutes a continuing pattern and course of conduct as opposed to unrelated discrete acts." [Joseph v. J.J. Mac Intyre Cos., LLC, 281 F. Supp. 2d 1156, 1158-59 (N.D. Cal. 2003).]  The court focused on the pattern of the defendant's harassing conduct, and found a continuing violation because "claims of a pattern of debtor harassment consisting of a series of calls cannot be said to occur on any particular day."  Id. at 1161 (internal quotations marks omitted) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115, 122 S. Ct. 2061, 2073, 153 L. Ed. 2d 106 (2002)).  In other words, "[i]t occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own terms."  Morgan, 536 U.S. at 115, 122 S. Ct. at 2073.

Id. at 1009 (some alterations in Lowther).  Further,

> UDAP claims are subject to tolling based on fraudulent concealment.  See, e.g., Galima v. Ass'n of Apartment Owners of Palm Court ex rel. Bd. of Dirs., CIVIL 16-00023 LEK-KSC, 2018 WL 6841818, at *11 (D. Hawai`i Dec. 31, 2018) ("Galima 12/31/18 Order"), recon. denied, 2019 WL 1102188 (Mar. 8, 2019). . . .
>
> > "A statute of limitations may be tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did not know of its existence."

> Hexcel Corp. v. Ineos Polymers, Inc., 681
> F.3d 1055, 1060 (9th Cir. 2012). . . .
>
> Galima v. Ass'n of Apartment Owners of Palm Court
> ex rel. Bd. of Dirs., CIVIL 16-00023 LEK-KSC,
> 2017 WL 1240181, at *16 (D. Hawai`i Mar. 30,
> 2017) ("Galima 3/30/17 Order") (some alterations
> in Galima 3/30/17 Order).

5/31/19 Order, 2019 WL 2330885, at *9 (alterations in 5/31/19

Order).

Paragraph 21 of the Third Amended Complaint alleges

AHMSI did not have authority to enter into the Loan Modification

Agreement.  See also Pltf. Aff., Exh. 2 (Loan Modification

Agreement).  This alleged UDAP violation is premised upon the

alleged invalidity of the 2008 Assignment.  See also Third

Amended Complaint at ¶¶ 24-25 (allegations regarding the 2008

Assignment); Torres Decl., Exh. E (2008 Assignment).  For the

reasons stated supra Discussion Section I, Plaintiff

Individually cannot challenge the 2008 Assignment.  These

portions of the UDAP claim therefore fail as a matter of law,

and it is unnecessary to address the remainder of Defendants'

arguments as to those portions of the UDAP claim.

Paragraph 22 of the Third Amended Complaint alleges

that, on or about March 18, 2009, Defendants made an

unauthorized $24,072.85 charge to the Loan account, but

Plaintiff did not discover it until 2017.  Because Plaintiff

originally filed this action on April 6, 2016 in state court,

the allegedly unauthorized charge occurred beyond the four-year limitations period.  See 5/31/19 Oder, 2019 WL 2330885, at *1 (discussing proceedings in the state court).  Plaintiff has not presented sufficient evidence to raise a triable issue of fact as to whether the unauthorized charge was part of a continuing violation or whether Defendants fraudulently concealed the violation.  The portion of the UDAP claim based on the allegedly unauthorized charge is therefore time-barred.

Paragraphs 33 to 37.f and 47 to 48 of the Third Amended Complaint address the alleged failure to properly apply payments toward the Loan in 2010 and 2011.  The fraudulent concealment doctrine does not apply because Plaintiff knew that he submitted payments, and he knew or should have known whether those payments were applied to the Loan account.  Plaintiff has not presented any evidence suggesting that the alleged failures to apply payments toward the Loan account were part of a violation that continued into the limitations period.  Therefore, the portion of the UDAP claim based on the alleged failure to properly apply payments in 2010 and 2011 accrued when the payments were processed, and Plaintiff Individually failed to bring the claim within the four-year limitation period.

Paragraph 50 of the Third Amended Complaint relates to an April 5, 2011 letter in which AHMSI states the Loan account was in foreclosure because of non-payment.  Paragraph 51 relates

42

to an April 7, 2011 notice of acceleration that also refers to the foreclosure. Paragraph 53 relates to the same letter and notice. Plaintiff has not presented evidence regarding the letters described in paragraphs 50, 51, and 53. These portions of the UDAP claim therefore fail as a matter of law, and it is unnecessary to address the remainder of Defendants' arguments as to those portions of the UDAP claim.

Paragraphs 65 to 68 of the Third Amended Complaint relate to Deutsche Bank's recording of documents in 2011 in connection with the foreclosure of the Property. Plaintiff alleges the recording of the documents and the initiation of the foreclosure proceedings constituted UDAP violations because Deutsche Bank did not hold valid title to the Property, due to the defect in the 2008 Assignment. For the reasons stated *supra* Discussion Section I, this argument fails. Therefore the portions of the UDAP claim based on the allegations in paragraphs 65 to 68 fail as a matter of law, and it unnecessary to address the remainder of Defendants' arguments as to those portions of the UDAP claim.

Because all portions of the UDAP claim fail as a matter of law, Defendants are entitled to summary judgment as to Count I.

**B.** **FDCPA**

Count II alleges Defendants have: violated 15 U.S.C. § 1692d "by harassing, oppressing, and abusing [Plaintiff] and his family"; [Third Amended Complaint at ¶ 102.a;] made "false, deceptive and misleading representations," in violation of 15 U.S.C. § 1692e; [id. at ¶ 102.b;] and violated 15 U.S.C. § 1692f(6) by sending "their agents to the Property to harass [Plaintiff] despite the fact that they did not have valid title to the Property," [id. at ¶ 102.c].  Further, Plaintiff Individually alleges the following constitute FDCPA violations (although he does not identify the specific provisions of the FDCPA that were violated): wrongfully recording a *lis pendens*; [id. at ¶ 102.d;] failing to provide an accurate accounting for the Loan; [id. at ¶ 102.e;] failing provide Plaintiff with an opportunity to cure the alleged default; [id. at ¶ 102.f;] and filing the Affidavit of Debt on June 23, 2017 in the second foreclosure action, that "contain[d] numerous wrongful and false charges, fees, and misapplication of payments made by Plaintiff," [id. at ¶ 102.g].

Defendants argue the FDCPA claim fails because: the majority of the allegations the claim is based upon occurred outside of the limitations period; Plaintiff Individually is not the consumer obligated to repay the debt; and the actions by an

independent company hired to inspect the Property cannot support a FDCPA claim against Defendants.

### 1.   Debt Collector

Plaintiff Individually appears to assert Count II against Defendants collectively.   [Id. at ¶¶ 98-102.g.]   However,

> [u]nder the FDCPA, creditors are generally excluded from its definition of debt collector. See 15 U.S.C. § 1692a(6)(F)(ii)-(iii).  "The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned."  Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985) (citations omitted).  Indeed, under § 1692a(6), "you have to attempt to collect debts owed another before you can ever qualify as a debt collector."  Henson v. Santander Consumer USA Inc., --- U.S. ----, 137 S. Ct. 1718, 1724, 198 L. Ed. 2d 177 (2017).

Hochroth v. Ally Bank, 461 F. Supp. 3d 986, 1001-02 (D. Hawai`i 2020) (footnotes omitted).  Under the FDCPA,

> [t]he term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

15 U.S.C.A. § 1692a(4).  Deutsche Bank obtained the beneficial interest in M.A. Chavez's Loan on May 1, 2007, and the account was not in default at that time.  [Torres Decl. at ¶ 7.] Deutsche Bank is therefore a creditor under § 1692a(4), and it

is not a debt collector under § 1692a(6)(F)(ii)-(iii).  To the

extent that Plaintiff Individually attempts to bring a FDCPA

claim against Deutsche Bank, the claim fails as a matter of law.

###   2.   Section 1692d

The Third Amended Complaint alleges "Defendants have

repeatedly sent their agents to Plaintiff's property to harass

him and his family."  [Third Amended Complaint at ¶ 95.]

Defendants submitted testimony that: "Homeward and Ocwen

retained an independent company, Altisource, to conduct exterior

inspections of the Property.  This is standard procedure to

insure [sic] a property secured by a non-performing loan is not

vacant or abandoned."  [Torres Decl. at ¶ 19.]  Plaintiff has

not responded with any evidence suggesting that there is a

triable issue of fact as to whether any entity other than

Altisource sent representatives to the Property.

Section 1692d states, in pertinent part: "A debt

collector may not engage in any conduct the natural consequence

of which is to harass, oppress, or abuse any person in

connection with the collection of a debt."  In general, "[a]n

FDCPA claim requires the following: (1) the plaintiff is a

consumer; (2) 'the debt arises out of a transaction entered into

for personal purposes'; (3) the defendant is a debt collector;

and (4) a violation of a provision under the FDCPA."  Hochroth,

461 F. Supp. 3d at 999 (quoting Datta v. Asset Recovery Sols., LLC, 191 F. Supp. 3d 1022, 1028 (N.D. Cal. 2016)).

Altisource was retained to conduct inspections of the Property. There is no indication that Altisource engaged in any other activities regarding the Property. Because Altisource did not engage in debt collection activities, it is not a debt collector under the FDCPA, and Ocwen and AHMSI cannot be held liable under FDCPA for Altisource's actions. See id. at 1008-09. Thus, even if there was a triable issue of fact as to whether Altisource committed an action that violated § 1692d, Plaintiff Individually cannot maintain a claim against Ocwen and AHMSIs for that violation.

### 3. Section 1692e

15 U.S.C. § 1692e states, in pertinent part: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." As to the portion of the FDCPA claim based on § 1692e, Plaintiff merely refers generally to the "representations as described above." [Third Amended Complaint at ¶ 102.b.] It is therefore assumed that this portion of the FDCPA claim relies upon the same alleged misrepresentations that the UDAP claim is based upon. This portion of the FDCPA claim fails for the same reasons that the portion of the UDAP claim based on alleged misrepresentations fails: the representations were beyond the

limitations period;[17] the continuing violations doctrine and tolling based on fraudulent concealment do not apply under the facts of this case;[18] and, as to any representations that were made during the limitations period, Plaintiff has failed to raise a triable issue of fact as to whether those representations were false, deceptive, or misleading.  Thus, the portion of the FDCPA claim alleging violations of § 1692e fails as a matter of law.

### 4.   Section 1692f(6)

15 U.S.C. § 1692f states, in pertinent part:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:

. . . .

(6)  Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--

(A)  there is no present right to possession of the property claimed as

_____

[17] 15 U.S.C. § 1692k(d), titled "Jurisdiction," states: "An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs."

[18] The continuing violation doctrine and equitable tolling can apply to FDCPA claims.  See, e.g., Lowther, 971 F. Supp. 2d at 1009 (continuing violation); Galima 3/30/17 Order, 2017 WL 1240181, at *13-14 (equitable tolling).

> collateral through an enforceable
> security interest[.]

This portion of the FDCPA claim is premised upon Plaintiff's theory that Deutsche Bank did not hold a valid interest in the Property, and therefore Ocwen and AHMSI violated § 1692e(6)(A) when they took, or directed, actions related to the foreclosure of the Property. See Third Amended Complaint at ¶ 102.c. This claim fails as a matter of law because Deutsche Bank did have a valid interest in the Property, for the reasons set forth *supra* Discussion Section I.

### 5. Allegations Regarding the Loan

Plaintiff Individually alleges Defendants failed to provide him with accurate information about the Loan, failed to give him the opportunity to cure the alleged default, and wrongfully pursued its remedies under the Mortgage by recording a *lis pendens* and by recording the June 23, 2017 Affidavit of Debt. All of these allegations relate to information about, and remedies for default of, the Mortgage. Plaintiff Individually, however, was never the obligor under the Mortgage. Plaintiff states he assumed liability for the Mortgage, [Pltf. Aff. at ¶ 2,] but this apparently only refers to the fact that he voluntarily made payments on the Mortgage. In 2012, Plaintiff applied to officially assume the Mortgage, see id. at ¶ 14.i &

49

Exh. 12, but there is no evidence in the record that Defendants accepted or granted the assumption application.

For purposes of the FDCPA, "[t]he term 'consumer' means any natural person obligated or allegedly obligated to pay any debt."  15 U.S.C. § 1692a(3).  Because Plaintiff Individually was not legally obligated on the Mortgage, he is not a consumer for purposes the FDCPA claim based on the allegations in paragraphs 102.d to 102.g of the Third Amended Complaint.  Those portions of the FDCPA therefore fail as a matter of law.[19]

Because all portions of the FDCPA claim brought by Plaintiff Individually fail as a matter of law, Defendants are entitled to summary judgment as to Count II.[20]

## C.   Intentional Interference

In Count VI, Plaintiff Individually alleges he has a valid business relationship with the tenants who rent the second house on the Property, as well as the prospective buyers who will someday buy the second house.  [Third Amended Complaint at

---

[19] The portion of the FDCPA claim based on the contents of the Affidavit of Debt, filed on June 23, 2017, also fails because the Affidavit of Debt is not part of the record before this Court on summary judgment.

[20] To the extent that any arguments in the Motion regarding the FDCPA claim are not addressed in this Order, this Court concludes that an analysis of those issues is not necessary in light of the rulings in this Order.

¶¶ 123, 125.]  Plaintiff contends Defendants intentionally interfered with these relationships by, *inter alia*, refusing to accept Mortgage payments and wrongfully accelerating the Mortgage.  Defendants argue they are entitled to summary judgment as to Count VI because Plaintiff has not, and cannot, submit evidence of the intent required to prove a claim for intentional interference with prospective business advantage. This Court has stated:

> The elements of an intentional interference with prospective economic/business advantage claim are:
>
> > (1) the existence of a valid business relationship or a prospective advantage or expectancy sufficiently definite, specific, and capable of acceptance in the sense that there is a reasonable probability of it maturing into a future economic benefit to the plaintiff; (2) knowledge of the relationship, advantage, or expectancy by the defendant; (3) **a purposeful intent to interfere with the relationship, advantage, or expectancy**; (4) legal causation between the act of interference and the impairment of the relationship, advantage, or expectancy; and (5) actual damages.
>
> Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel, 113 Hawai`i 251, 268 n.18, 151 P.3d 732, 749 n.18 (2007)

5/31/19 Order, 2019 WL 2330885, at *13 (emphasis added).

Plaintiff has presented some evidence that Defendants were aware that he was renting out one of the houses on the Property.  See, e.g., Pltf. Aff., Exh. 14 (materials associated

with Plaintiff's application to assume the Loan) at PageID #: 1347 (Plaintiff's Homeward Residential Loan Assumption Application reporting $5,400 in rental income).  However, Plaintiff has presented no evidence that Defendants' actions with regard to the Loan account were undertaken with "a purposeful intent to interfere with the relationship" between Plaintiff Individually and the tenants.  See Kahala Royal, 113 Hawai`i at 268 n.18, 151 P.3d at 749 n.18.  Further, Plaintiff has presented no evidence suggesting that Defendants were aware that he intended to sell the second house on the Property. Because Plaintiff has failed to establish a genuine issue of fact as to Defendants' intent, his intentional interference claim fails as matter of law, and Defendants are entitled to summary judgment as to Count VI.

### D.   **Fraud**

In Count VIII, Plaintiff Individually alleges Defendants made various fraudulent representations to him. [Third Amended Complaint at ¶ 136.]  Defendants argue they are entitled to summary judgment as to the fraud claim because the representations that the claim is based upon are outside of the statute of limitation.  Further, as to any representations that are within the limitations period, Plaintiff cannot meet the heightened requirements to prove a fraud claim.

52

The Third Amended Complaint cites the representations described in paragraphs 25, 26, 34, 37, 47, 48, 50, 51, 72, and 74 of the Third Amended Complaint, "among others." [Id.]  In light of the heightened pleading standard for fraud claims, only the representations specifically identified in the Third Amended Complaint will be considered.  See 5/31/19 Order, 2019 WL 2330885, at *13 (discussing the heightened pleading standard imposed by Fed. R. Civ. P. 9(b)).

### 1.   Assignments

Paragraph 25 of the Third Amended Complaint alleges Linda Green's signature on the 2008 Assignment was a forgery. See Torres Decl., Exh. E (2008 Assignment) at PageID #: 1059 (Linda Green's signature).  Fraudulent misrepresentation and other claims sounding in fraud are subject to the six-year statute of limitations period in Haw. Rev. Stat. § 657-1(4). McLauchlan v. Boyd, Civil No. 10-00671 LEK-RLP, 2012 WL 13018730, at *6 (D. Hawai`i Apr. 26, 2012) (citing cases).  The 2008 Mortgage is dated November 10, 2008 and was recorded on November 14, 2008.  [Torres Decl., Exh. E at PageID #: 1058.] The alleged fraud in the 2008 Assignment therefore occurred beyond the six-year limitations period.

Plaintiff has not presented any evidence suggesting that this portion of his fraud claim accrued later than the recording of the 2008 Assignment, nor is there any evidence

53

suggesting that the statute of limitations should be tolled.
Because Plaintiff's self-serving statements in his affidavit
regarding Linda Green's signature have been disregarded, see
*supra* Discussion Section I, there is nothing in the record which
raises a genuine issue of material fact as to the timeliness of
the portion of the fraud claim based on Linda Green's signature
on the 2008 Assignment.  This portion of the fraud claim fails
as a matter of law.

Paragraph 26 of the Third Amended Complaint alleges
Deutsche Bank lacked the legal authority to enter into the 2017
Assignment.  See also Torres Decl., Exh. F (2017 Assignment).
The portion of the fraud claim based on the 2017 Assignment was
timely filed.  However, for the reasons stated *supra* Discussion
Section I, Plaintiff has not raised a genuine issue of material
fact as to the validity of the 2017 Assignment.  This portion of
the fraud claim therefore fails as a matter of law.

### 2. Communications

Paragraph 34 of the alleges that, in a May 17, 2010
letter, AHMSI told Plaintiff $3,769.73 was being held in a
suspense account, and another $661.59 was taken from the
suspense account and applied toward the principal because it was
misapplied during the loan modification process.  See also Pltf.
Aff., Exh. 18 (5/17/10 letter).  Plaintiff asserts this letter
was fraudulent because it did not explain why the entire amount

in the suspense account was not applied to the principal.

[Third Amended Complaint at ¶ 34.]

> To establish a fraud claim, a plaintiff must
> allege the following elements: "(1) false
> representations were made by [the defendant],
> (2) with knowledge of their falsity (or without
> knowledge of their truth or falsity), (3) in
> contemplation of plaintiff's reliance upon these
> false representations, and (4) plaintiff did rely
> upon them." Shoppe v. Gucci Am., 14 P.3d 1049,
> 1067 (Haw. 2000) (quoting TSA Int'l Ltd. v.
> Shimizu Corp., 990 P.2d 713, 725 (Haw.
> 1999)). . . .

Evans v. Gilead Scis., Inc., Case No. 20-cv-00123-DKW-KJM, 2020

WL 5189995, at *13 (D. Hawai`i Aug. 31, 2020) (some alterations

in Evans).  Plaintiff has not presented any evidence suggesting

there is a genuine issue of material fact as to the elements of

his fraud claim based on the May 17, 2010 letter.  Thus,

Plaintiff cannot prove his prima facie case as to the portion of

his fraud claim based on the May 17, 2010 letter.

Paragraph 37 of the Third Amended Complaint alleges

that, in a March 19, 2010 statement, a March 19, 2011 statement,

and four phone calls during March 2011, AHMSI representatives

fraudulently stated that excess funds would be applied to the

Mortgage.  See also Pltf. Aff., Exh. 21 (Annual Escrow Account

Disclosure Statements dated 3/19/10 and 3/19/11).  Because

Plaintiff has not presented any evidence regarding the telephone

calls described in paragraphs 37.b to 37.e, those portions of

the fraud claim fails.  Further, Plaintiff has not presented any

evidence suggesting there is a genuine issue of material fact as the elements of his fraud claim based on the Annual Escrow Account Disclosure Statements.  Thus, Plaintiff cannot prove his prima facie case as to the portion of his fraud claim based on the allegations in paragraph 37.a to 37.f of the Third Amended Complaint.

Paragraphs 47 and 48 address the failure to apply the insurance proceeds that Plaintiff attempted to pay toward the Mortgage in March 2011.  The portion of the fraud claim fails because the parties agree that Plaintiff submitted two insurance proceed checks, one for $2,445.00 and one for $1,656.84, and those amounts were applied to the Loan account.  See Pltf.'s CSOF at ¶¶ 11, 16-17; Reply CSOF at ¶¶ 11, 16-17.  There was no fraudulent representation as to those payments.

Paragraph 50 of the Third Amended Complaint relates to an April 5, 2011 letter in which AHMSI states that the Loan account was in foreclosure because of non-payment.  Paragraph 51 relates to an April 7, 2011 notice of acceleration that also refers to the foreclosure.  Plaintiff alleges these were fraudulent because he had not received a notice of default. Paragraph 74 refers to a January 19, 2016 letter from Ocwen stating that the Note was "held by American Home Mortgage Asset Trust 2007-03, Mortgage-Backed Pass-Through Certificates Series 2007-3."  As with the letters described in paragraphs 50 and 51,

Plaintiff has not presented evidence regarding the letter described in paragraph 74.  Thus, the portions of the fraud claim based on those letters fail as a matter of law.

Paragraph 72 refers to an August 27, 2013 response to Plaintiff's request for a loan modification.  See also Pltf. Aff., Exh. 12 at PageID #: 1321.  Plaintiff alleges the statement that the Loan was "not eligible for modification 'because the loan has been charged off and you have been released from liability from repayment'" was fraudulent.  [Third Amended Complaint at ¶ 72.]  The portion of Plaintiff's fraud claim based on the August 27, 2013 letter is timely.  However, even if that representation was false, Plaintiff has not presented any evidence suggesting that Hermarie Beard, who sent the letter, intentionally made a false representation and contemplated that Plaintiff would rely on it.  Plaintiff therefore cannot establish his prima facie case as to this portion of his fraud claim.

Because all portions of Plaintiff's fraud claim fail as a matter of law, Defendants are entitled to summary judgment as to Count VIII.

### E.   IIED

Count IX alleges: "Defendants recklessly placed the Property in foreclosure and knowingly and willfully [sic] communicated wrongful information to Plaintiff that has

encumbered his Property as a result"; [Third Amended Complaint at ¶ 141] and Defendants engaged in other harassment and intimidation, [id. at ¶ 143]. Defendants argue the IIED claim by Plaintiff Individually fails because the majority of the allegations fall outside of the two-year statute of limitations period and because the timely allegations do not constitute sufficiently outrageous conduct to support an IIED claim.

This Court has stated:

> The elements of an IIED claim are: "1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another." Young v. Allstate Ins. Co., 119 Hawai`i 403, 429, 198 P.3d 666, 692 (2008). "The term 'outrageous' has been construed to mean without cause or excuse and beyond all bounds of decency." Enoka v. AIG Haw. Ins. Co., 109 Hawai`i 537, 559, 128 P.3d 850, 872 (2006) (citation and internal quotation marks omitted)). "The question whether the actions of the alleged tortfeasor are unreasonable or outrageous is for the court in the first instance, although where reasonable people may differ on that question it should be left to the jury." Young, 119 Hawai`i at 429, 198 P.3d at 692 (citation and quotation marks omitted). . . .

5/31/19 Order, 2019 WL 2330885, at *15.

> "Default and foreclosure proceedings generally do not rise to the level of extreme and outrageous conduct. Denying a loan modification which might result in foreclosure is no more 'outrageous in character' than actually foreclosing." Erickson v. Long Beach Mortg. Co., No. 10-1423 MJP, 2011 WL 830727, at *7 (W.D. Wash. Mar. 2, 2011) (citation omitted) (dismissing IIED claim on summary judgment). But cf. Bass v. Ameriquest Mortg. Co., Civ. No. 09-00476 JMS-BMK, 2010 WL

3025167, at *10–11 (D. Haw. Aug. 3, 2010)
(denying summary judgment as to an IIED claim
where the plaintiff asserted that the defendant
"forged her signature on the 2006 loans, refused
to honor [her] right of cancellation of the loans
when she discovered the forgeries, and commenced
foreclosure proceedings against [her] when she
failed to make her loan payments").

Caraang v. PNC Mortg., 795 F. Supp. 2d 1098, 1122 (D. Hawai`i

2011) (alterations in Caraang) (citation omitted), *amended in*

*part on other grounds*, 2011 WL 9150820 (July 6, 2011), *and*

*aff'd*, 481 F. App'x 362 (9th Cir. 2012).

Even viewed in the light most favorable to Plaintiff,

the evidence in the record merely show actions Defendants took

in the course of loan collection, default, and foreclosure

proceedings.  Plaintiff has not presented any evidence

suggesting that there is a genuine issue of fact regarding the

question of whether Defendants committed any actions that went

beyond those types of actions.  Even if Plaintiff can prove that

**errors** were made during those processes, the errors are not

enough to establish outrageous conduct, such as the intentional

conduct in Bass, 2010 WL 3025167.  Because Plaintiff

Individually cannot establish a required element of his IIED

claim, the claim fails as a matter of law, and Defendants are

entitled to summary judgment as to Count IX.[21]

---

[21] In light of this ruling, it is not necessary to address
the statute of limitations issue.

F.   <u>**NIED**</u>

Finally, Count X alleges "Defendants actions described above in wrongfully foreclosing on the Property, communicating false information, not providing an accurate accounting, mishandling and converting Plaintiff's funds, creating a cloud on title, and engaging in acts of harassment and intimidation against Plaintiff were, if not malicious, intentional, and reckless, were conducted negligently." [Third Amended Complaint at ¶ 147.] Plaintiff alleges he has suffered serious emotional distress, as well as a cognizable injury, as a result of Defendants' actions, and the Property has also suffered a cognizable injury. [<u>Id.</u> at ¶¶ 148-49.] In the Motion, Defendants argue the NIED claim fails because: many of the actions that the claim is based upon are outside of the limitations period; Plaintiff has not shown Defendants owed him a duty of care; Plaintiff has not shown he has suffered a physical injury and serious emotional distress; and an NIED claim cannot be maintained based on economic loss.

This district court has stated the elements of a NIED claim are:

(1)  that the defendant engaged in negligent conduct;

(2)  that the plaintiff suffered serious emotional distress; and,

> (3) that such negligent conduct by the defendant was a legal cause of the serious emotional distress.
>
> <u>Kauhako v. State of Hawaii Bd. Of [sic] Ed.</u>, Civ. No. 13-00567 DKW-BMK, 2015 WL 5312359, *11 (D. Haw. Sept. 9, 2015).
>
> An NIED claim is merely a negligence claim alleging a wholly psychic injury. Duty and breach of duty are essential elements of an NIED claim and are analyzed utilizing ordinary negligence principles. <u>Kahoohanohano v. Dep't of Human Servs.</u>, 178 P.3d 538, 582 (Haw. 2008).

<u>Ricks v. Matayoshi</u>, CIV. NO. 16-00044 HG-KSC, 2017 WL 1025170, at *11 (D. Hawai`i Mar. 16, 2017), *aff'd sub nom.* <u>Ricks v. Dep't of Educ.</u>, 752 F. App'x 518 (9th Cir. 2019). Further, under Hawai`i law, as part of the plaintiff's requirement to prove actual injury, he must prove "that someone was physically injured by the defendant's conduct, be it the plaintiff himself or herself or someone else." <u>Doe Parents No. 1 v. State, Dep't of Educ.</u>, 100 Hawai`i 34, 69–70, 58 P.3d 545, 580–81 (2002) (citation omitted). There is an exception to this rule for circumstances that "provide the requisite assurance that the plaintiff's psychological distress is trustworthy and genuine," such as exposure to blood that is positive for the human immunodeficiency virus or where a corpse was mishandled while it was being prepared for a funeral, burial, or cremation. <u>Id.</u> at 70, 58 P.3d at 581 (citing <u>John & Jane Roes 1-100 v. FHP, Inc.</u>, 91 Hawai`i 470, 476–77, 985 P.2d 661, 667-68 (1999); <u>Guth v.</u>

Freeland, 96 Hawai`i 147, 154–55, 28 P.3d 982, 989–90 (2001)).

Further, Haw. Rev. Stat. § 663-8.9 requires that, if "the psychological distress arises solely out of damage to property or to material objects," the plaintiff himself must have a predicate physical injury.  Id. at 69, 58 P.3d at 580.

        Here, Plaintiff's alleged emotional distress arises from the problems with the Loan, the encumbrances on the Property, and the default/foreclosure proceedings that followed. Because the alleged emotional distress arises solely out of damage to a property interest, he must himself have a predicate physical injury to pursue an NIED claim.  The record does not contain any evidence that Plaintiff suffered a physical injury. During the hearing on the Motion, Plaintiff's counsel represented that Plaintiff has been undergoing professional counseling for the past four or five months.  However, Plaintiff's counsel acknowledged that this information is not reflected in Plaintiff's CSOF, and Plaintiff did not update his discovery responses to reflect this recent development.  Thus, evidence of Plaintiff's counseling is not part of the record before this Court.

        Even if Plaintiff was allowed it to supplement the record to include evidence regarding his counseling, it would not save his NIED claim.  While the fact that Plaintiff is undergoing professional counseling may be sufficient to raise a

triable issue of fact as to whether he suffered serious emotional distress, it does not raise a triable issue of fact as to whether Plaintiff suffered an underlying physical injury. Even if Plaintiff could establish an underlying physical injury through these counseling sessions, it does not raise a triable issue of fact as to causation.  See id. (stating that, based on Hawai`i case law and § 663-8.9, the physical injury suffered by the claimant must have been caused "by the defendant's conduct").  Because Plaintiff Individually cannot establish a required element of his NIED claim, the claim fails as a matter of law, and Defendants are entitled to summary judgment as to Count X.[22]

**CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment, filed August 28, 2020, is HEREBY GRANTED, and summary judgment is granted in favor of Defendants as to all of Plaintiff's claims in the Third Amended Complaint, filed December 4, 2019.  There being no remaining claims in this case, the Clerk's Office is DIRECTED to enter judgment in favor of Defendants on **December 15, 2020**, unless Plaintiff files a timely motion for reconsideration of this Order.

---

[22] In light of this ruling, it is not necessary to address the statute of limitations issue and the other issues raised regarding the NIED claim.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, November 30, 2020.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**LUIS C. CHAVEZ, ETC. VS. DEUTSCHYE BANK NATIONAL TRUST COMPANY, ET AL**; CV 17-00446 LEK-RT; ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT